[No. 64144-1-I. Division One. March 28, 2011.]

*In the Matter of the Guardianship of* JANETTE KNUTSON.

DAVID KNUTSON ET AL., *Appellants*, v. THE DEPARTMENT OF SOCIAL AND HEALTH SERVICES, *Respondent*.

*Michael L. Johnson* (of *Hardman & Johnson*), for appellants.

*Robert M. McKenna, Attorney General,* and *Jonathon D. Bashford, Assistant,* for respondent.

¶1 SCHINDLER, J. — The Washington State Department of Social and Health Services (DSHS) has cared for Janette Knutson since the mid-1980s at a state institution for the developmentally disabled. On February 15, 2008, the guardians of her estate, David Knutson and Susan Hall, obtained

an ex parte order authorizing the guardians to donate the estate income, consisting primarily of Social Security benefits, to advocacy groups instead of continuing to pay DSHS a portion of the cost of care. The guardians appeal the superior court order directing the guardians to pay for Janette's cost of care instead of donating the estate income to advocacy groups. We reject the guardians' argument that DSHS did not have standing to bring a motion to amend the order. We hold that the superior court order directing the guardians to pay DSHS for a portion of Janette's care and maintenance does not violate the antiattachment provision of the Social Security Act (Act), 42 U.S.C. section 407(a), and affirm.

## FACTS

¶2 Janette Knutson is a legally incapacitated adult who suffers from severe mental retardation and developmental disabilities.[1] Janette is a full time resident of a state facility for developmentally disabled, the Fircrest School in Seattle. Fircrest is one of five residential habilitation centers established by state law to care for persons with developmental disabilities.[2]

¶3 In 1980, the court appointed Janette's parents Ramona and David Knutson as guardians of her estate. Janette's primary source of income is from Social Security benefits. The Social Security Administration appointed David Knutson as the representative payee for Janette's Social Security benefits.[3]

¶4 State law requires residents of residential habilitation centers to pay a portion of the cost of "care, support and

---

[1] We refer to Janette Knutson by her first name for purposes of clarity and mean no disrespect by doing so.

[2] RCW 71A.20.020.

[3] As a general rule, the Social Security Administration pays benefits directly to the beneficiary. 20 C.F.R. § 404.2001(b)(1). However, if the beneficiary cannot manage the benefits, the Social Security Administration appoints a representative payee. 20 C.F.R. § 404.2001(a). In selecting a representative payee, the Act gives priority to the beneficiary's legal guardian or relative. 20 C.F.R. § 404.2021(a)(1).

treatment."[4] In determining the amount an incapacitated person is responsible to pay, DSHS must "determine the assets of the estates of each resident of a residential habilitation center and the ability of each such estate to pay all, or any portion of, the average monthly charge for care, support and treatment at a residential habilitation center."[5] Here, there is no dispute that since at least 1986, the estate paid DSHS for a portion of the cost of care for Janette at Fircrest.

¶5 In January 2008, the guardians of Janette's estate, David Knutson and Susan Hall, filed a report, accounting, proposed budget, and personal care plan for the three-year reporting period beginning July 1, 2004 and ending June 30, 2007.[6] In the report, the guardians also requested approval of fees and costs for the next three-year reporting period.[7]

¶6 The proposed plan for Janette's care remained the same. The report provides, in pertinent part:

> Janette is not considered appropriate for removal due to her fragile medical condition and/or the extent of her disabilities. She requires the assistance of the expertise and skilled care provided by nursing facility . . . or intermediate care facility for the mentally retarded.

¶7 The report states that Janette has no assets and receives Social Security and Medicaid benefits of $668 per month. According to the report, "[t]he account balance always remains below $2,000.00 in order for continuing eligibility for Medicaid benefits."

---

[4] RCW 43.20B.410.

[5] RCW 43.20B.425. The cost of care is computed by subtracting allowable deductions from an individual's qualifying income. *See* RCW 43.20B.420 through .425; WAC 388-513-1380 (calculation of financial participation in cost of care). If the resident disagrees with the calculation of the cost of care, the resident may request a hearing under the Administrative Procedure Act, chapter 34.05 RCW. RCW 43.20B.430.

[6] The guardians of an incapacitated person must file a report and accounting with the court every three years. RCW 11.92.040(2), (3).

[7] The report notes that coguardian Kriselle Seiber was removed in 2007.

¶8 The guardians' proposed budget for the next three-year reporting period sets forth the monthly expenditures. The proposed budget provides, in pertinent part:

**Proposed Budget:** The Guardian of the Estate seeks authority to make expenditures for the Incapacitated Person according to the following proposed budget:

**a. Monthly Expenditures for the Incapacitated Person:**

| | CURRENT | PROPOSED | COMMENTS |
|---|---|---|---|
| Room and Board | $ Medicaid. | | |
| Personal Allowance | $ 51.68 | | |
| Med[ical]/Dental Insurance | $ Medicaid. | | |
| Other | $ Not applicable. | | |
| Guardian's Allowance | $ 175.00 Per Month | | |
| Advocacy Organizations | $ Balance of Social Security Benefit | | |
| Attorney Fee Allowance | $ Fixed Fee Paid at End of Reporting Period. | | |
| **TOTAL PROPOSED MONTHLY EXPENDITURES** | **$ Social Security Benefit** | | |

¶9 In the "Guardian Fees" section of the report, the guardians requested approval of "fees and costs for the next reporting period," including guardian fees and donations to two advocacy groups, Voice of the Retarded (VOR) and Friends of Fircrest. The Guardian Fees section states, in pertinent part:

**Guardian Fees:** The Guardian is requesting the following fees and costs for the next reporting period:

| | | |
|---|---|---|
| 1. Guardian fees | $ 175.00 per month; |
| 2. Donation to VOR | $ 200.00 per month; |
| 3. Donation to Friends of Fircrest | $ Balance of social security benefit after payment of attorney fees. |

(a) The Guardian [X] has [ ] has not received payments in the amount of $175.00 during this accounting period for their services.

¶10 In the "Guardian's Monthly Allowance" section, the guardians requested a monthly allowance for guardian fees

and costs under the guardianship statute as well as the discretion to donate "the remaining balance of each monthly social security benefit amount" to the two advocacy organizations. The Guardian's Monthly Allowance section states, in pertinent part:

> Finally, the Guardian requests discretion to donate up [sic] the remaining balance of each monthly social security benefit amount (a) to organizations advocating on behalf of the developmentally disabled, including the following organizations: Action RHC, Friends of Fircrest, VOR, or similar organizations, and/or (b) for lobbying expense for legislation that benefits or advances the rights and interests of Janette Knutson.

¶11 The guardians noted review of the "Guardian's Report, Accounting, Proposed Budget, and Request for Fees" on the ex parte commissioner's guardianship calendar for February 15, 2008. The guardians gave notice of the hearing date to DSHS as an interested governmental agency.[8]

¶12 On February 15, a court commissioner entered an "Order Approving Guardian's Report, Accounting, Budget, and Personal Care Plan" for Janette, the monthly guardian fee allowance, and payment of attorney fees. As requested in the report, the ex parte order gives the guardians the discretion to donate "the remaining balance of each monthly social security benefit amount." The order provides, in pertinent part:

> The guardian may exercise his discretion to donate up [sic] the remaining balance of each monthly social security benefit amount (a) to organizations advocating on behalf of the developmentally disabled . . . and/or (b) for lobbying expense for legislation that benefits or advances the rights and interests of Janette Knutson. Those expenses are reasonable and necessary and are approved for payment.

¶13 The order also states that the fees and expenses "shall be paid by David Knutson as representative payee of Janette Knutson's social security benefits, who shall deduct

---

[8] RCW 11.92.180 requires guardians to give notice to DSHS when an incapacitated individual resides in a DSHS facility and is required to contribute a portion of their income toward the cost of their long-term care.

these fees and expenses from the benefits when calculating participation in cost of care, and prior to transmittal of any benefits to the DSHS." The order requires DSHS to adjust the calculation of the cost of care "for each calendar month."

¶14 On May 30, 2008, DSHS sent a notice to Janette and the guardians recalculating the cost of care at Fircrest. The notice states that the participation cost of care of $628 would be reduced to take into account approval of guardian fees and attorney fees. The notice states, in pertinent part:

> PER COURT ORDER DATED 2/15/08 THE AMOUNT YOU PAY IN PARTICIPATION WILL BE REDUCED BY $175/MO (GUARDIAN FEES) 2/2008 – 1/2011; AND $1000 (ATTORNEY FEES) $400 2/2008, $400 3/2008, & $200 4/2008.

The recalculated participation cost of care was $451 per month. DSHS did not reduce the cost of care for donations to advocacy groups. The notice provides information about how to appeal the recalculated amount.

¶15 The guardians did not appeal the recalculation of the participation cost of care. But the guardians stopped making any payments for Janette's cost of care at Fircrest. Instead, after deducting fees, the guardians donated Janette's Social Security benefits to VOR and Friends of Fircrest.

¶16 On April 20, 2009, DSHS filed a motion to amend the February 15, 2008 ex parte order. DSHS asked the commissioner to direct the guardians to pay the participation cost of Janette's care at Fircrest instead of donating the estate income to advocacy groups, and to reimburse DSHS for the cost of care amounts that had not been paid. In response, the guardians argued that DSHS did not have standing and did not comply with the statutory requirements to establish responsibility to pay for Janette's participation cost of care. The commissioner denied the motion to amend the order.

¶17 Both parties filed a motion to revise the commissioner's decision. The guardians claimed DSHS did not have standing to file the motion to amend the February 15 order, the motion was untimely, and DSHS did not comply with

the requirements to modify the terms of the order under CR 60. The guardians also argued the commissioner erred in ruling that DSHS complied with the requirements to establish the participation cost of care and in refusing to consider a notice that DSHS sent to another resident of Fircrest by certified mail. For the first time, the guardians asserted that the antiattachment provision of the Act precluded the court from directing the guardians to pay DSHS for Janette's cost of care with her Social Security benefits.

¶18 DSHS asserted that it had standing under the guardianship statute to bring a motion to amend the February 15 order, and that it did not have to comply with the requirements of CR 60 because the order applied prospectively. DSHS also argued that the February 15 order was ambiguous and did not authorize deductions for charitable donations from the need to pay for Janette's cost of care.

¶19 The court ruled that DSHS had standing to bring the motion to amend the February 15 order, that DSHS complied with the statutory requirements for giving the guardians and Janette notice of the participation cost of care in 1986, and that DSHS could initiate "a new process to determine Ms. Knutson's financial responsibility for her participation in cost of care under RCW 43.20B.410 - .455."

¶20 The court concluded that the antiattachment provision of the Act did not prevent the court from ordering the estate to pay for Janette's cost of care at Fircrest with her Social Security income. The court ordered the guardians to pay the participation cost of care from the income of the estate, and concluded that "[c]haritable contributions are not an appropriate deduction from a DSHS long-term care client's participation in cost of care under the applicable federal and state regulations." The court ruled that "[t]he Guardian shall not have the discretion to make charitable contributions from Ms. Knutson's Social Security income."[9]

---

[9] The court order states, in pertinent part:

The Guardian shall not have the discretion to make charitable contributions from Ms. Knutson's Social Security income. Paragraph 4 of the commissioner's

However, based on the determination that the language of the February 15 order was ambiguous, the court did not require the guardians to reimburse DSHS. The guardians appeal the superior court order.

## ANALYSIS

¶21 The guardians argue the superior court erred in ruling that (1) DSHS had standing to bring a motion to amend the commissioner's February 15 order and (2) the antiattachment provision of the Act did not prevent the court from ordering the guardians to pay DSHS for a portion of Janette's cost of care with her Social Security income.

¶22 On a motion to revise a commissioner's ruling, the superior court's review of the record is de novo. *In re Marriage of Moody*, 137 Wn.2d 979, 993, 976 P.2d 1240 (1999).[10] Where, as here, the superior court makes independent findings and conclusions, the order on revision supersedes the commissioner's ruling. *In re Marriage of Dodd*, 120 Wn. App. 638, 644, 86 P.3d 801 (2004). Accordingly, " 'the appeal is from the superior court's decision, not the commissioner's.' " *State v. Ramer*, 151 Wn.2d 106, 113, 86 P.3d 132 (2004) (quoting *State v. Hoffman*, 115 Wn. App. 91, 101, 60 P.3d 1261 (2003)). We review challenged findings of fact for substantial evidence and the conclusions of law de novo. *Dodd*, 120 Wn. App. at 643. Unchallenged findings of fact are verities on appeal. *In re Estate of Jones*, 152 Wn.2d 1, 8, 93 P.3d 147 (2004); *see* RAP 10.3(g). The management of the guardianship by the superior court is reviewed for abuse of discretion. RCW 11.92.010; *In re Guardianship of Johnson*, 112 Wn. App. 384, 387-88, 48 P.3d 1029 (2002).

---

Order of February 15, 2008, is thus AMENDED. . . . The Guardian is ordered to pay Ms. Knutson's participation in cost of care, as established under RCW 43.20B.430, from her monthly income. . . . Nothing in this order shall prevent the Guardian from collecting guardian fees as allowed in the 2008 Order. Such fees are approved as reasonable for deduction from Ms. Knutson's participation in DSHS cost of care.

[10] A different standard of review may apply in those rare instances where the commissioner considers live testimony. *Moody*, 137 Wn.2d at 993.

¶23 Preliminarily, the guardians argue the court erred in concluding DSHS had standing to bring a motion to amend the ex parte commissioner's order authorizing payment of Janette's Social Security benefits to advocacy groups instead of paying for a portion of the cost of care at Fircrest. The guardians contend DSHS did not have standing because it did not comply with the statutory requirements necessary to establish financial responsibility for Janette's cost of care at Fircrest.

 ¶24 RCW 43.20B.430 requires DSHS to send a notice of financial responsibility by certified mail to the guardians of the estate. There is no dispute that DSHS complied with the statutory requirements in 1986 but thereafter sent notices of financial responsibility by first class mail and not by certified mail.[11] Without regard to whether DSHS complied with the requirements to establish financial cost of care after 1986, we conclude that DSHS has standing to bring a motion to direct the guardians to pay for an incapacitated person's cost of care under the guardianship statute.

¶25 "Guardians . . . shall at all times be under the general direction and control of the court making the appointment." RCW 11.92.010. The court retains jurisdiction and broad authority to supervise the guardians and the incapacitated person's estate until the estate is terminated. RCW 11.92.010; *In re Guardianship of Gaddis*, 12 Wn.2d 114, 123, 120 P.2d 849 (1942). The guardianship court "is said to be the superior guardian of the ward," and the guardian is an agent of the guardianship court. *Seattle-First Nat'l Bank v. Brommers*, 89 Wn.2d 190, 200, 570 P.2d 1035 (1977).

¶26 Under RCW 11.92.040(4), the guardian of an estate has a duty "[t]o protect and preserve the guardianship estate, to apply it as provided in [chapter 11.92 RCW, and] to

---

[11] The guardians also challenge the court's refusal to consider a notice of financial responsibility that the guardians allege DSHS properly served by certified mail on an unrelated party. Below, DSHS objected to the document as unauthenticated and inadmissible hearsay. We review the trial court's evidentiary rulings for an abuse of discretion. *City of Spokane v. Neff*, 152 Wn.2d 85, 91, 93 P.3d 158 (2004). The court did not abuse its discretion in refusing to consider the unauthenticated document.

perform all of the duties required by law." The guardian of an incapacitated person must also "care for and maintain the incapacitated person in the setting least restrictive to the incapacitated person's freedom and appropriate to the incapacitated person's personal care needs." RCW 11.92.043(4).

¶27 While the court may authorize the guardian to use "funds not required for the incapacitated person's own maintenance and support," the unequivocal statutory priority is the maintenance and support of the incapacitated person. RCW 11.92.140. RCW 11.92.140 provides, in pertinent part:

> The court . . . may authorize the guardian . . . to apply funds not required for the incapacitated person's own maintenance and support, in any fashion the court approves as being in keeping with the incapacitated person's wishes so far as they can be ascertained and as designed to minimize . . . taxes, permit entitlement under otherwise available federal or state medical or other assistance programs, and to provide for gifts to such charities . . . as would be likely recipients of donations from the incapacitated person.

¶28 RCW 11.92.040(6) expressly allows the agency responsible for the care and custody of an incapacitated person to petition the court for an order directing the guardian to pay for the care of the incapacitated person. RCW 11.92.040 provides, in pertinent part:

> It shall be the duty of the guardian or limited guardian of an estate:
>
> . . . .
>
> (6) To apply to the court no later than the filing of the inventory for an order authorizing disbursements on behalf of the incapacitated person: PROVIDED, HOWEVER, That the guardian . . . or the person, department, bureau, agency, or charitable organization having the care and custody of an incapacitated person, may apply to the court for an order directing the guardian or limited guardian of the estate to pay to the person, department, bureau, agency, or charitable organization having the care and custody of an incapacitated person, . . . to be expended in the care, maintenance, and

education of the incapacitated person and of his or her dependents. . . . The amounts authorized under this section may be decreased or increased from time to time by direction of the court.

¶29 The guardians concede that DSHS "ostensibly has standing under this statute [RCW 11.92.040(6)]." Nonetheless, without citation to authority, the guardians argue that because payments for Janette's cost of care go to the state's general fund instead of directly to Fircrest, the payments are not being used for her care and maintenance. Because the guardians cite no relevant authority in support of their argument, we decline to address their argument. *Stiefel v. City of Kent*, 132 Wn. App. 523, 532, 132 P.3d 1111 (2006). However, we note that the record shows the cost of care for Janette at Fircrest far exceeds the participation cost of care the estate is required to pay DSHS.[12]

¶30 The guardians' primary argument is that the order directing the representative payee to use Social Security benefits to pay DSHS the participation cost of care violates the antiattachment provision of the Act, 42 U.S.C. section 407(a). The guardians also argue that the court cannot direct the guardians to pay DSHS for Janette's cost of care because such an order is "other legal process" prohibited by the antiattachment provision of the Act.

¶31 The antiattachment provision of the Act provides that Social Security benefits are not subject to "execution, levy, attachment, garnishment, or other legal process." 42 U.S.C. § 407(a). The antiattachment provision of the Act, 42 U.S.C. section 407(a), provides, in pertinent part:

---

[12] The guardians also argue that the superior court erred in considering the motion to amend because the ex parte commissioner's order was final and DSHS did not comply with the requirements of CR 60. We reject the guardians' argument that the February 15 ex parte order was a final order. By its own terms, the order gave the guardians the discretion to prospectively donate Janette's Social Security benefits to advocacy groups instead of using the money to pay DSHS for a portion of the cost of Janette's care. We also reject the guardians' argument that the court abused its discretion in determining that it was in Janette's best interest to contribute to her cost of care and maintenance before donating money to advocacy groups as unsupported by the record or the statutory requirements of RCW 11.92.140.

The right of any person to any future payment under this subchapter shall not be transferable or assignable, at law or in equity, and none of the moneys paid or payable or rights existing under this subchapter shall be subject to execution, levy, attachment, garnishment, *or other legal process*, or to the operation of any bankruptcy or insolvency law.

(Emphasis added.)

¶32 In *Washington State Department of Social & Health Services v. Guardianship Estate of Keffeler*, 537 U.S. 371, 383-86, 123 S. Ct. 1017, 154 L. Ed. 2d 972 (2003), the United States Supreme Court addressed the meaning of "other legal process" as used in the antiattachment provision of the Act. In *Keffeler*, DSHS, as the representative payee for foster care children receiving Social Security benefits, used the benefits to offset the cost of care. *Keffeler*, 537 U.S. at 378-79. The Washington State Supreme Court held that because DSHS was involved in a "creditor-type" act, using the Social Security benefits to reimburse itself violated section 407(a). *Keffeler*, 537 U.S. at 380. The United States Supreme Court disagreed and reversed.

¶33 The Court concluded that the key question under section 407(a) is not whether DSHS was a creditor but whether the "manner of gaining control of the federal funds involve[d] 'other legal process.'" *Keffeler*, 537 U.S. at 383. The Court stated that "restriction to the statutory usage of 'other legal process' is important." *Keffeler*, 537 U.S. at 383-84. The Court concluded that while "in the abstract," DSHS uses legal process in making claims to obtain reimbursement, section 407(a) should be interpreted far more restrictively. *Keffeler*, 537 U.S. at 384. Applying the canons of noscitur a sociis and ejusdem generis,[13] the Court held that the antiattachment provision of the Act

---

[13] "The maxim *noscitur a sociis*, that a word is known by the company it keeps, while not an inescapable rule, is often wisely applied where a word is capable of many meanings in order to avoid the giving of unintended breadth to the Acts of Congress." *Jarecki v. G.D. Searle & Co.*, 367 U.S. 303, 307, 81 S. Ct. 1579, 6 L. Ed. 2d 859 (1961). Under ejusdem generis, "'[w]here general words follow specific words in a statutory enumeration, the general words are construed to embrace only objects similar in nature to those objects enumerated by the preceding specific words.'" *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 114-15, 121 S. Ct.

uses the term "other legal process" far more restrictively, for under the established interpretative canons of *noscitur a sociis* and *ejusdem generis*, " '[w]here general words follow specific words in a statutory enumeration, the general words are construed to embrace only objects similar in nature to those objects enumerated by the preceding specific words.' " Thus, "other legal process" should be understood to be process much like the processes of execution, levy, attachment, and garnishment, and at a minimum, would seem to require utilization of some judicial or quasi-judicial mechanism, though not necessarily an elaborate one, by which control over property passes from one person to another in order to discharge or secure discharge of an allegedly existing or anticipated liability.

*Keffeler*, 537 U.S. at 384-85 (alteration in original) (citations omitted) (quoting *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 114-15, 121 S. Ct. 1302, 149 L. Ed. 2d 234 (2001)).

¶34 The Court also noted that in the Social Security Administration's Program Operations Manual System (POMS), the commissioner of Social Security (SSA Commissioner) defines "legal process" under section 407(a) similarly to mean

"any writ, order, summons or other similar process *in the nature of garnishment.* It may include, but is not limited to, an attachment, writ of execution, income execution order or wage assignment that is issued by . . . [a] court of competent jurisdiction . . . [or a]n authorized official pursuant to an order of a court of competent jurisdiction or pursuant to State or local law . . . [a]nd is directed to a governmental entity." POMS GN 02410.200 (emphasis added).

*Keffeler*, 537 U.S. at 385 (alterations in original).

¶35 The guardians assert that the order violates the antiattachment provision of the Act by directing the representative payee to pay for Janette's cost of care with Social Security benefits. The guardians cite and rely on the language in *Keffeler* that the State cannot compel the "representative payee to pay Social Security benefits over to the State." *Keffeler*, 537 U.S. at 389.

1302, 149 L. Ed. 2d 234 (2001) (quoting 2A Norman J. Singer, Statutes and Statutory Construction § 47.17 (Sands 4th ed. 1991)).

¶36 But contrary to the guardians' assertion and the premise of their argument, the superior court order is not directed to the representative payee. The order is clearly directed only to the guardians to use the estate income for Janette's care and maintenance at Fircrest. While the order is a judicial mechanism, it does not violate the anti-attachment provision of the Act. The representative payee retains control of the Social Security benefits and, as DSHS concedes, "is not subject to the direct control of the guardianship court." Because David Knutson is not subject to the superior court's order in his role as representative payee, he retains the discretion vested in him by the federal government to dispose of Social Security funds according to federal regulations and oversight of the Social Security Administration.[14] However, here, David Knutson, as the representative payee, deposited Janette's Social Security benefits into a guardianship account under the control of her court-appointed guardians. Because the guardians derive their power over that account solely from the appointment as Janette's guardians under chapter 11.88 RCW, use of the funds in that account by the guardians are subject to the oversight and control by the state courts.

¶37 We hold that while 42 U.S.C. section 407(a) prohibits a court from directing the representative payee to pay

---

[14] The regulations governing the representative payee's use of the Social Security benefits, 42 U.S.C. section 405(j)(1)(A), direct the representative payee to use the benefits for the "use and benefit" of the beneficiary for "current maintenance." 20 C.F.R. § 404.2040(a)(1). The Social Security Administration defines "current maintenance" to include the "cost incurred in obtaining food, shelter, clothing, medical care, and personal comfort items." 20 C.F.R. § 404.2040(a)(1). Under 20 C.F.R. section 404.2040(b), current maintenance includes customary charges made by an institution where a beneficiary is receiving care. 20 C.F.R. section 404.2040(b) states, in pertinent part:

If a beneficiary is receiving care in a Federal, State, or private institution because of mental or physical incapacity, current maintenance includes the customary charges made by the institution, as well as expenditures for those items which will aid in the beneficiary's recovery or release from the institution or expenses for personal needs which will improve the beneficiary's conditions while in the institution.

If any benefits remain after paying for current maintenance, the payee must conserve or invest those funds in trust for the beneficiary. 20 C.F.R. § 404.2045(a). And under state law, a guardian must seek permission from the court to use an incapacitated person's funds for gifts and charitable giving. RCW 11.92.140.

Social Security benefits, it does not prevent the superior court under the guardianship statute from overseeing the estate of an incapacitated person and directing the guardians to pay for the care and maintenance of the ward.

¶38 The court has a duty to oversee Janette's estate. RCW 11.92.010; *Brommers*, 89 Wn.2d at 200. In that capacity, the court has the authority to issue an order directing the guardians to use the income of the estate to pay for the ward's current care and maintenance. And the guardianship statute, RCW 11.92.040(6), allows an entity caring for the incapacitated person to petition the court to direct the guardians to pay for the costs of care and maintenance, not to enforce debt but, rather, in order to ensure ongoing care and maintenance.

¶39 The cases cited by the guardians, *Philpott v. Essex County Welfare Board*, 409 U.S. 413, 93 S. Ct. 590, 34 L. Ed. 2d 608 (1973) and *Bennett v. Arkansas*, 485 U.S. 395, 108 S. Ct. 1204, 99 L. Ed. 2d 455 (1988) are distinguishable. As the Supreme Court noted in *Keffeler*, both *Philpott* and *Bennett* involved judicial actions by the state to attach Social Security benefits. *Keffeler*, 537 U.S. at 388; *see Philpott*, 409 U.S. at 415 (lawsuit to enforce reimbursement agreement); *Bennett*, 485 U.S. at 396 (state filed action seeking to attach Social Security benefits). Because the guardianship court exercised its supervisory authority under RCW 11.92.040(6) in directing the guardians to pay DSHS for a portion of Janette's cost of care at Fircrest, the order did not violate the anti-attachment provision of the Act, 42 U.S.C. section 407(a).

¶40 As our state Supreme Court observed on remand in *Keffeler*, the Social Security Administration is the proper forum to address complaints regarding a representative payee's use of Social Security benefits. *In re Guardianship of Keffeler*, 151 Wn.2d 331, 88 P.3d 949 (2004). We note that paying for current care and maintenance is consistent with the Social Security regulations and the SSA Commissioner's interpretation of those regulations. The regulations expressly allow payments of Social Security benefits to the state for institutional care. *See* 20 C.F.R. §§ 404.2040, 416.640 (defining payments to state institutions for cost of care to be for the

use and benefit of the beneficiary). Social Security regulations governing representative payees also allow and encourage the use of benefits to pay for the " 'cost[s] incurred in obtaining food, shelter, clothing, medical care, and personal comfort items.' " *Keffeler*, 537 U.S. at 386 (alteration in original) (quoting 20 C.F.R. §§ 404.2040(a), .640(a)). The regulations do not authorize use of Social Security benefits for charitable giving or donations to advocacy groups. Nor are such uses appropriate when funds remain, even after paying for current maintenance. *See* 20 C.F.R. §§ 404.2040(b), 404.2045(a). The SSA Commissioner has interpreted the Act to say that a beneficiary's best interests are served "by seeing that basic needs are met, not by maximizing a trust fund attributable to fortuitously overlapping state and federal grants." *Keffeler*, 537 U.S. at 390.

*Attorney Fees*

¶41 The guardians request attorney fees on appeal under RCW 11.96A.150. DSHS objects to an award of fees. DSHS argues that because no other case has addressed the question of the role of the guardianship court and the antiattachment provision, the guardians are not entitled to fees. *See In re Estate of D'Agosto*, 134 Wn. App. 390, 402, 139 P.3d 1125 (2006). We agree with DSHS and deny the guardians' request for attorney fees on appeal.

## CONCLUSION

¶42 DSHS had standing to file a motion to amend the commissioner's ex parte order authorizing the guardians to donate the income of the estate to advocacy groups instead of paying for the incapacitated person's cost of care. The antiattachment provision of the Act does not prohibit a guardianship court from directing the guardians to pay for the cost of care and maintenance of an incapacitated person before donating funds to advocacy groups.

¶43 We affirm.

DWYER, C.J., and LAU, J., concur.

After modification, further reconsideration denied June 17, 2011.