IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

IN RE THE MARRIAGE OF:

SHANNON MICHELLE HENERY,

               Appellant,

         v.

WALKER LOGAN HAGIUS,

              Respondent.

No. 86293-6-I

DIVISION ONE

UNPUBLISHED OPINION

CHUNG, J. — Shannon Henery and Walker Hagius finalized their dissolution in November 2022. Among other things, the final dissolution orders awarded real property and financial assets to each party and ordered Henery to make an equalizing transfer payment to Hagius. Nine months later, Hagius filed a motion to enforce the dissolution orders. Hagius sought to require Henery to sign documents necessary to transfer ownership of real property and an individual retirement account (IRA) awarded to him; to disburse the required transfer payment; and to pay accrued interest. After a commissioner granted the motion in part, but denied the request for interest, the superior court revised the commissioner's order and ordered Henery to transfer 100 percent of the value of the IRA account and pay interest on the transfer payment. The superior court declined to award attorney fees to either party.

Henery appeals the superior court's order on revision. Because Henery fails to establish that the superior court erred, we affirm.

**FACTS**

The trial court entered final orders dissolving the marriage of Shannon Henery and Walker Hagius on November 18, 2022. The court found that the parties separated on February 5, 2021, the date Henery petitioned for dissolution, and stated that "[a]ll property will also be valued as of this date, including real property." The trial court awarded to each party a parcel of real property and provided that each party was responsible for the mortgage and other costs associated with the real property allocated to them. Because the assets awarded to Henery had a higher value, the court ordered her to make an equalizing transfer payment of $203,339 to Hagius. The dissolution decree ("decree") reduced the transfer payment to a judgment and set the interest rate on the judgment at 12 percent per annum.

In finding 9, the dissolution court stated, "The spouses' community personal property is divided equally as follows," and listed the parties' community property financial assets and the party to whom each asset was awarded. The list included Fidelity IRA account #9194, with a balance of $326,981.73, and designated it as property awarded to Hagius, "with the net present value as of the Date of Separation, to be divided by a Qualified Domestic Relations Order [QDRO]."[1] The court explained in additional findings that it had previously "found and ruled orally that whether any transfer payment would be required depended

---

[1] In listing the Fidelity IRA and awarding it to Hagius, the order parenthetically references the supporting trial exhibit, "Ex. 77, Bal: $326,981.73."

2

on a final valuation of the two retirement accounts awarded to [Hagius] (Fidelity IRA #9194 and Schwab 401(k))." Then, based on the parties' post-trial supplemental submissions, the court adopted final values reflected in a spreadsheet, "Exhibit A," attached to both the court's findings and the decree. The spreadsheet indicates a lower balance for the same Fidelity IRA account, $296,982. The court explained that it had discounted the value of the account by $30,000 "to account for the more limited liquidity" of the account[2] and used the values in the spreadsheet to calculate the amount of the equalizing transfer payment, $203,339. The court also ruled that each party was responsible for their own attorney fees.

Four months after entry of the trial court's final orders, Henery filed motions for contempt and to restrict abusive litigation. Henery alleged that Hagius owed child support and failed to make mortgage payments between January and March 2023 on the real property that had been awarded, but not yet transferred, to him. Henery reported that to mitigate the effect of Hagius's default on her credit score, she made three mortgage payments on Hagius's behalf. Henery also argued that Hagius engaged in a pattern of abusive litigation against her in the underlying dissolution and by filing a writ of garnishment post-dissolution. The court denied the motion to restrict abusive litigation and declined to find Hagius in contempt.

In August 2023, nine months after entry of the final dissolution orders, Hagius filed a motion to enforce the dissolution decree. Hagius asked the court to

---

[2] The court also discounted the value of the Schwab 401(k) by $10,000 for the same reason. .

3

(1) order Henery to sign the quitclaim deed and tax document necessary to transfer ownership of the real property awarded to him; (2) order disbursement of the transfer payment awarded to him; (3) order Henery to sign the paperwork necessary to transfer the Fidelity IRA account; (4) appoint a special master to effectuate these transfers; and (5) award attorney fees and costs to him.

In response, Henery explained that Hagius's default on the mortgage prevented her from securing a line of credit to raise funds for the transfer payment. And Henery asserted that the transfer payment should be offset by $16,507.04, the total amount she had paid to keep the mortgage current on the real property awarded to Hagius. As to the Fidelity IRA, Henery claimed that the final orders provided for the transfer of a specified amount of funds from that account, $296,982, based on the value assigned to the account in Exhibit A to the findings and decree.

A superior court commissioner granted the motion to enforce, in part. The commissioner ordered Henery to execute the documents required to transfer the real property awarded to Hagius and to disburse the transfer payment, minus the offset, reducing the transfer payment Henery owed from $203,339 to $186,831.96. The commissioner declined to impose interest on the transfer payment, reasoning that Hagius's failure to pay the mortgage "impacted [Henery's] ability to secure the funds in a timely manner." The commissioner also ordered Henery to sign the documents necessary to "transfer from the Fidelity IRA #9194, the amount of $296,982.00 as of November 18, 2022, into a Fidelity rollover account with any gains or losses thereon from November 18, 2022

4

through the date of the transfer, for the Respondent." Noting the discrepancy in values for the Fidelity IRA in the court's findings versus Exhibit A, the commissioner determined that the value listed in Exhibit A, $296,982, should control. The commissioner found that both parties made the litigation more difficult than necessary, and awarded attorney fees of $2,500 to Hagius, approximately 30 percent less than the amount he requested.

Hagius sought reconsideration. He challenged the waiver of interest and argued that the issue of an offset was not properly before the court, absent a cross motion. Hagius also claimed that, regardless of the value of the Fidelity IRA at the time of separation, the dissolution court's findings made it clear that the court intended to award him the entire Fidelity IRA account, whatever the value at the time of transfer.

The commissioner entered findings and conclusions on reconsideration, rejecting Hagius's objection to the offset and reaffirming its decision to waive interest, noting that both parties had "unclean hands." The commissioner reconsidered its prior ruling as to the value of the Fidelity IRA at the time of separation, concluding that $296,982 was the value of the account as of the date of the final orders, November 18, 2022, and $326,981.73 was the value on February 5, 2021, at separation. The commissioner's order on reconsideration directed Henery to transfer the "value of the account as of February 5, 2021, along with any gains or losses thereon from that date through the date of transfer" to an account in Hagius's name.

5

Hagius sought revision by a superior court judge. Hagius again challenged the decision to waive interest and argued that the dissolution court intended to award him the full value of the Fidelity IRA account on the date of transfer.[3]

Henery argued in response that the commissioner's original determination of the value of the Fidelity IRA at the time of separation, $296,982, was correct and that the dissolution court intended to award only that specific amount to Hagius. Both parties requested attorney fees.

The superior court heard argument on the motion and revised the commissioner's order, in part. The court determined that Hagius was entitled to interest on the judgment, as provided in the decree, which accrued from November 18, 2022, the date of the judgment, until the date of payment, September 28, 2023. In calculating the amount of interest due, the court took into account the offset credited toward the judgment. The superior court further ruled that the underlying dissolution orders awarded to Hagius "100% of the Fidelity IRA #9194 together with all investment gains and losses on that account to be transferred through a Fidelity rollover." The superior court declined to revise the fees previously awarded or to award additional fees to either party.

Henery appeals.

**DISCUSSION**

Commissioners' rulings are "subject to revision by the superior court." RCW 2.24.050. The superior court reviews a motion to revise a commissioner's ruling de novo based on the record presented before the commissioner. In re

---

[3] Hagius reported that transfer of title to the property was resolved and abandoned his challenge to offset of the transfer payment.

Marriage of Williams, 156 Wn. App. 22, 27, 232 P.3d 573 (2010). When, as here, "the superior court makes independent findings and conclusions, the order on revision supersedes the commissioner's ruling." In re Guardianship of Knutson, 160 Wn. App. 854, 863, 250 P.3d 1072 (2011). Thus, we review the superior court's decision, not the commissioner's. Williams, 156 Wn. App. at 27. We review the superior court's findings of fact for substantial evidence in the record and its conclusions of law de novo. Knutson, 160 Wn. App. at 863.

We also review de novo the interpretation of the terms of dissolution orders, applying the rules of construction applicable to statutes and contracts to determine the intent of the dissolution court. In re Marriage of Thompson, 97 Wn. App. 873, 877-78, 988 P.2d 499 (1999). We read and construe the court's orders as a whole, giving meaning and effect to every word. Stokes v. Polley, 145 Wn.2d 341, 346, 37 P.3d 1211 (2001).

I.     Fidelity IRA

Henery argues that the superior court erred by interpreting the dissolution orders to require transfer of the full value of the Fidelity IRA. Henery claims that the different values assigned to the account in the court's final orders amount to a "scrivener's error." And relying on a footnote in Exhibit A that states that the Fidelity IRA is a "sum-certain amount" and any post-separation deposits to the account would be separate property, Henery claims the court intended to award to Hagius only a specific portion of the Fidelity IRA account funds, $296,982.

But reading the orders as a whole, we conclude that the difference in the values in the findings and on the spreadsheet was deliberate. The court's

findings, substantiated by evidence in the record, establish that (1) the value of the Fidelity IRA account at the time of separation was $326,981.73, (2) the court awarded the entire account to Hagius, and (3) for the express purpose of calculating the transfer payment, the court discounted the value of the account by $30,000 due to costs associated with liquidating the asset. [4] And, as the superior court pointed out, even if the final orders were unclear as to the value of the account at the time of separation, that issue was ultimately irrelevant to the determination of whether the court intended to divide the account.

There is no dispute that the purpose of assigning value to the parties' assets was to determine the necessity and amount of a payment to equalize the property awarded to the parties at a specific point in time. Consistent with the findings allocating the Fidelity IRA account to the "Respondent," Exhibit A places the entire value assigned to the account in Hagius's "community award" column. The court's orders do not suggest an intent to assign to Hagius a fixed amount or to allocate to Hagius only a specific percentage of the account. As the superior court observed, the "sum-certain" language in the footnote of Exhibit A was intended to call attention to a valuation that was different from the actual balance of the account reflected in the findings.

The revision court also observed that the language directing the parties to execute a QDRO was ultimately unnecessary and simply corresponds to the

---

[4] Henery filed a motion to supplement the record on appeal with three trial exhibits. Supplementation is allowable under RAP 9.10, but only if this court concludes the existing record "is not sufficiently complete to permit a decision on the merits of the issues presented for review." Because the Fidelity IRA statement confirming the balance of the account at the time of separation is already a part of the appellate record and the other exhibits are unnecessary to reach a decision on the merits of the issues presented for review, we deny the motion.

provision in Exhibit A that protected Henery if she had deposited funds into the account after separation. While Henery now contends that the record is insufficient to determine that she had no separate property interest based on post-separation contributions, she asserted no separate property interest below. Moreover, in seeking to enforce the decree, Hagius expressly pointed out that Henery did not claim to have made any post-separation deposits, and Henery did not dispute the assertion. Nor did she object or correct the record when the superior court indicated on the record that there were no post-separation deposits.

Finally, Henery argues that the revision court's interpretation of the dissolution orders results in an unequal division of property, contrary to the dissolution court's intent. Again, relying on Exhibit A, she points out that the community property awards were equal only if the balance of the transferred Fidelity IRA account did not exceed $296,982. This argument is unavailing.

Henery fails to appreciate that Exhibit A equalized the division of property only at a precise point in time, at least a year and nine months before any assets were transferred. The court did not, and could not, enter any order that guaranteed that the property values would remain static or that the property awards would remain equal. And the record includes no evidence of the value of any of the community property assets at the time of actual transfer. The court explicitly stated its intent that the discounted value on Exhibit A reflected the illiquidity of the account and was relevant *only to the calculation of the transfer payment*.

9

The revision court correctly interpreted the dissolution orders to require Henery to transfer the full value of the Fidelity IRA to Hagius.

II.      Post-Judgment Interest

Citing the trial court's "broad equitable powers in family law matters," Henery argues that the superior court abused its discretion when it determined that she owed post-judgment interest and denied her equitable request to waive the interest. In re Marriage of Morris, 176 Wn. App. 893, 903, 309 P.3d 767 (2013); In re Marriage of Farmer, 172 Wn.2d 616, 625, 259 P.3d 256 (2011) (courts have "continuing equitable jurisdiction" in family law matters that allows them "to grant whatever relief the facts warrant").

Washington courts must enter judgments that comply with RCW 4.56.110, which requires interest on judgments to accrue at the maximum rate permitted under RCW 19.52.020—12 percent. In re Marriage of Harrington, 85 Wn. App. 613, 630-31, 935 P.2d 1357 (1997). And here, the dissolution court's order unambiguously imposes post-judgment interest. Henery does not argue otherwise, and she did not appeal that aspect of the decree.

The superior court determined that, even assuming it had authority to waive the interest ordered on an equitable basis, the record did not support the commissioner's conclusion that Hagius "acted with unclean hands sufficient to warrant waiving the interest."

Henery cited multiple reasons for the delayed transfer payment—including rising interest rates, a corresponding downturn in the housing market that particularly affected high-end homes, and an inability to obtain a home equity line

of credit due to Hagius's failure to pay the mortgage on co-owned property. Interest rates and Henery's ability to sell at an optimal sale price were, of course, outside of Hagius's control and unrelated to his conduct. For his part, Hagius asserted that he was relying on receipt of the transfer payment to pay the mortgage, and because Henery did not make the payment, he had to borrow funds to meet his living and medical expenses. Henery did not explain why she failed to promptly transfer the real property to Hagius or pay any funds toward the transfer payment after she ultimately sold the property awarded to her. As the superior court noted, the commissioner's findings that "both parties failed to meet their underlying obligations of the Decree" and both came "to the court with unclean hands," undermined its apparent determination that the failure to comply with the decree was willful, one-sided, and warranted equitable relief from the interest imposed.[5]

The relevant unchallenged provision of the dissolution court's decree reduced the transfer payment to a judgment including interest at 12 percent per year. The evidence in the record supports the superior court's determination that Henery failed to conclusively show that Hagius was solely responsible for the delayed transfer payment, so its decision to deny Henery's claim for equitable relief from interest was tenable. The superior court did not err by enforcing the decree and ordering the payment of post-judgment interest.[6]

---

[5] The court noted that the commissioner waived interest without a request from Henery.

[6] We reject Henery's claim that the revision court (1) "inconsistently and inequitably" enforced the dissolution court's orders, (2) failed to meet its "obligation not to participate in or facilitate abuse," and (3) resolved the motion before it on the "narrowest technicalities available without addressing domestic abuse." The revision court's order was based on the terms of the unappealed final dissolution orders, not "technicalities." Those orders included findings of abuse,

11

III.     Attorney Fees Below

Henery challenges the superior court's denial of her request for attorney fees based on intransigence. Below, Henery requested attorney fees for having to respond to the motion to revise, alleging that Hagius (1) had a "history of intransigence," (2) made it impossible for her to comply with the decree, (3) "defaulted on child support," (4) sought to garnish her wages, (5) "harassed" her attorney with e-mails, and (6) "taunted" her on social media. Henery asserted that, in contrast to Hagius's post-judgment conduct, her post-judgment motions were brought in "good faith."

A court may enter an award of fees based on intransigence. In re Marriage of Foley, 84 Wn. App. 839, 846, 930 P.2d 929 (1997), abrogated on other grounds by In re Marriage of Wilcox, 3 Wn.3d 507, 553 P.3d 614 (2024). "Determining intransigence is necessarily factual, but may involve foot-dragging, obstructing, filing unnecessary or frivolous motions, refusing to cooperate with the opposing party, noncompliance with discovery requests, and any other conduct that makes the proceeding unduly difficult or costly." In re Marriage of Wixom, 190 Wn. App. 719, 725, 360 P.3d 960 (2015). The party requesting fees for intransigence must show the other party increased legal costs by, for instance, "forcing court hearings for matters that should have been handled without litigation." In re Marriage of Pennamen, 135 Wn. App. 790, 807, 146 P.3d

and imposed restrictions and limitations on Hagius's conduct in line with those findings. Although Henery now asserts that Hagius's conduct warranted a greater offset against the equalization payment, the court granted an offset in the amount Henery requested. The suggestion that the superior court facilitated abuse or ran afoul of our state's policies concerning domestic abuse by simply enforcing the dissolution court's order as to the division of property and interest on the transfer payment is wholly unwarranted.

466 (2006). We review a decision on attorney fees for an abuse of discretion. In re Marriage of Bobbitt, 135 Wn. App. 8, 29-30, 144 P.3d 306 (2006).

Henery does not allege that either Hagius's motion to enforce the decree or his motion to revise was frivolous or unnecessary. Such an argument would fail since those motions were successful in most respects. Her only claim that is tied to the enforcement motion is that Hagius took a "disingenuous" position with respect to the sufficiency of the evidence supporting her claim for an offset. But, as the commissioner noted, due to the timing of Hagius's counsel's appearance in the matter, it appeared that counsel may have been unaware of the evidence Henery previously submitted to corroborate her claim of payments on Hagius's behalf. Once apprised of the evidence, Hagius conceded the offset issue.

Neither party fully complied with the dissolution court's final orders, which led to further litigation and increased legal costs for both sides. In these circumstances, the superior court did not abuse its broad discretion in denying Henery's request for fees.

### IV.     Attorney Fees on Appeal

Both parties request attorney fees on appeal. Henery's request is based on Hagius's alleged intransigence, bad faith, and "campaign of abuse."[7] Henery also requests sanctions against Hagius under RAP 10.7 (authorizing sanctions for submission of appellate brief that fails to comply with the appellate procedural rules). Among other failures, Henery contends that Hagius's brief fails to provide

---

[7] Henery also references RCW 26.09.140, which permits an award of fees, after consideration of the financial resources of both parties, based on financial need. But she makes no argument with regard to her financial need and Hagius's ability to pay, nor has she submitted a financial declaration, as required by RAP 18.1(c).

citations to the appellate record to support all assertions of fact, improperly includes argument in the statement of facts, and fails to meaningfully address the issues she raises. *See* RAP 10.3(a)(5), (6). And Henery speculates that, although signed by counsel, the Respondent's brief "primarily reflects the efforts of Mr. Hagius himself."

However, Henery fails to identify intransigence or abusive conduct related to this appeal, and she has not prevailed on appeal.[8] Although neither party's submissions strictly complied with the Rules of Appellate Procedure, the failures were not so egregious as to "exact[ ] a heavy and unwarranted toll on the court's resources" or affect our ability to "efficiently and expeditiously [ ] review the accuracy of the factual statements made in the briefs." Litho Color, Inc. v. Pac. Emp'rs Ins. Co., 98 Wn. App. 286, 305-06, 991 P.2d 638 (1999). We deny Henery's request for fees on appeal and decline to impose sanctions under RAP 10.7.

Hagius argues that Henery's appeal is frivolous, her opening brief was untimely filed by two days, and she has exhibited intransigence. Hagius cites RAP 18.1, which provides, in relevant part, that attorney fees may be granted on appeal provided the applicable law grants a party the right to recover appellate fees. To the extent that Hagius seeks an award of fees as a sanction for filing a frivolous appeal, we deny the request because Hagius fails to identify authority to support it. Boyle v. Leech, 7 Wn. App. 2d 535, 542, 436 P.3d 393 (2019) (RAP

---

[8] While Respondent's brief lacks consistent citations to the record and includes argumentative assertions in its statements of fact, for her part, Appellant's brief also includes nonconforming citations to the record, as well as extensive discussion of facts that are not relevant to the procedure and issues presented for review. See RAP 10.4(f), (g).

18.1 requires more than a bald request; a party must provide argument and citation to authority to advise the court of the appropriate grounds to support an award). The essence of Hagius's claim of intransigence is that Henery's appeal lacks merit, but we do not conclude that the appeal is wholly devoid of merit or that Henery was intransigent for pursuing it.

We affirm the superior court's order on revision and decline to award attorney fees on appeal to either party.

_Chung, J._

WE CONCUR:

_Birk, J._          _Mann, J._