[No. 21181-5-II.   Division Two.   August 21, 1998.]

KIMBERLY J. DORSCH, *Individually and as Personal Representative, Appellant,* v. THE CITY OF TACOMA, *Respondent.*

*John A. Hoglund* of *Law Office of John A. Hoglund, P.S.*, for appellant.

*Robin Jenkinson, City Attorney*, and *Mark L. Bubenik, Chief Assistant*, for respondent.

HOUGHTON, C.J. — Kimberly Dorsch et al.[1] appeal from a

---

[1]Under RCW 51.24.050(1), the Department of Labor and Industries received assignment of this third party claim and referred the matter to private counsel. Kimberly Dorsch then filed this lawsuit, individually, and as personal representative of the Estate of Alan Dorsch, and as the natural parent and guardian of Brittney Griffith and Joseph Dorsch, minors. The parties are collectively referred to as Dorsch.

trial court dismissal of a lawsuit against the City of Tacoma based upon the death of Alan Dorsch. We affirm.

## FACTS

Sun Outdoor Advertising (Sun) applied to the City of Tacoma[2] (City) for a permit to construct a sign. After the City approved the application, Sun then applied to the City for an electrical permit to illuminate the billboard. The City also approved this application and installed the electrical connection.

On October 10, 1991, Alan Dorsch, a Sun employee, was working on the sign's catwalk. Alan Dorsch used a 20-foot aluminum ladder that came into contact with one of Tacoma City Light's powerlines as he was preparing to descend the billboard. Alan Dorsch received a severe electric shock, causing his death.

After the lawsuit was filed, both parties moved for summary judgment. The trial court ruled that the public duty doctrine barred the lawsuit and dismissed it. Dorsch appeals.

## ANALYSIS
### I. Public Duty Doctrine

The public duty doctrine[3] generally precludes municipal liability unless the plaintiff demonstrates one of several exceptions. Dorsch contends that the public duty doctrine is inapplicable because (1) the legislative intent behind the municipal codes protects individuals such as Alan Dorsch; (2) the City was engaged in a proprietary function; and (3) the City was engaged in an ultrahazardous activity.

### Legislative Intent

Dorsch asserts that the municipal sign and electricity

---

[2]The City of Tacoma owns and operates Tacoma City Light, a public utility which provides and furnishes electricity to residents and businesses.

[3]*Haberman v. Washington Pub. Power Supply Sys.*, 109 Wn.2d 107, 744 P.2d 1032, 750 P.2d 254, *appeal dismissed*, 488 U.S. 805 (1988).

regulations evidence an intent to protect a particular class of individuals, that is, workers who are untrained in electrical matters and work close to high voltage wires, such as Alan Dorsch.[4]

Under the public duty doctrine, the negligent performance of a governmental or discretionary police power duty enacted for the benefit of the public at large imposes no liability upon a municipality as to individual members of the public. *Taylor v. Stevens County*, 111 Wn.2d 159, 163, 759 P.2d 447 (1988); *Halvorson v. Dahl*, 89 Wn.2d 673, 574 P.2d 1190 (1978); *Campbell v. City of Bellevue*, 85 Wn.2d 1, 9-10, 530 P.2d 234 (1975); *Torres v. Salty Sea Days, Inc.*, 36 Wn. App. 668, 673, 676 P.2d 512, *review denied*, 101 Wn.2d 1008 (1984);[5] *see also Hoffer v. State*, 110 Wn.2d 415, 421-22, 755 P.2d 781 (1988), *reconsideration on other grounds*, 113 Wn.2d 148 (1989) (quoting *J&B Dev. Co. v. King County*, 100 Wn.2d 299, 303, 669 P.2d 468, 41 A.L.R.4TH 86 (1983), *overruled on other grounds sub nom. Taylor*, 111 Wn.2d at 159) ("a duty to all is a duty to no one")). Thus, tort liability based upon a municipal code may arise if that code, by its terms evidences a clear intent to identify and protect a particular class of persons. *Taylor*, 111 Wn.2d at 164.

In ascertaining the legislative intent, we look to the municipal code's declaration of purpose. *Taylor*, 111 Wn.2d at 165. Here, Tacoma Municipal Code (TMC) 2.04.020 provides that:

[t]he purpose of the chapter is the practical safeguarding of persons and of buildings and their contents from electrical hazards arising from the use of electricity for light, heat, power, radio, signaling, and for other purposes.

In addition, TMC 2.05.020 plainly states that its purpose is

---

[4]For the first time on appeal, Dorsch argues that the legislative intent behind the municipal electricity code permits suit, and so we do not address this issue. *See Brower v. Ackerley*, 88 Wn. App. 87, 96, 943 P.2d 1141 (1997) (issues not briefed or argued in trial court will not be considered on appeal), *review denied*, 134 Wn.2d 1021 (1998); RAP 2.5(a).

[5]*See generally* John H. Derrick, Annotation, *Modern Status of Rule Excusing Governmental Unit from Tort Liability on Theory That Only General, Not Particular, Duty Was Owed Under Circumstances*, 38 A.L.R.4TH 1194 (1985).

to "safeguard life, health, property and public welfare." This section indicates that the City intends generally to protect the public and not an identifiable class of persons, such as sign builders or maintenance personnel. Thus, the City's actions in issuing permits, inspection and administration are within the public duty doctrine, whether the permitting was for the sign or the electrical permits; and Dorsch's "legislative intent" exception to the public duty doctrine argument fails.

## Proprietary Function Exception

Dorsch next asserts that the public duty doctrine does not apply because the City engaged in proprietary functions by authorizing the erection of the billboard and the corresponding source of electricity.

■ The public duty doctrine does not apply where the government is performing a proprietary function. *Bailey v. Town of Forks*, 108 Wn.2d 262, 268, 737 P.2d 1257, 753 P.2d 523 (1988); *Moore v. Wayman*, 85 Wn. App. 710, 715, 934 P.2d 707, *review denied*, 133 Wn.2d 1019 (1997). In this respect, the government is held to the same duty of care as private individuals or institutions engaging in the same activity. *Bailey*, 108 Wn.2d at 268. A government acts in a proprietary capacity when it engages in a business-like venture as opposed to acting in a governmental capacity. *Hoffer*, 110 Wn.2d at 422 (citing BLACK'S LAW DICTIONARY 1097 (5th ed. 1979)); *Moore*, 85 Wn. App. at 716; *see Russell v. City of Grandview*, 39 Wn.2d 551, 553, 236 P.2d 1061 (1951) (city engaged in activities normally performed by private enterprise departs from governmental function and acts in proprietary capacity may be liable to that extent).

Examples of proprietary functions include medical and psychiatric care, *Petersen v. State*, 100 Wn.2d 421, 427-28, 671 P.2d 230 (1983), operation of a sewage system, *Hayes v. City of Vancouver*, 61 Wash. 536, 538, 112 P. 498 (1911), and operation of a water system, *Russell*, 39 Wn.2d at 553. In contrast, examples of governmental functions include build-

ing code inspections, *Moore*, 85 Wn. App. 710; *Taylor*, 111 Wn.2d 159, and workplace safety inspections, *Loger v. Washington Timber Products, Inc.*, 8 Wn. App. 921, 931, 509 P.2d 1009, *review denied*, 82 Wn.2d 1011 (1973).

▄ Here, the applicable municipal codes regulate signs and sign structures (TMC Chapter 2.05) and the use of electricity (TMC Chapter 2.04). TMC 2.05.020 specifically provides that:

> [t]he purpose of this code is to provide minimum standards to safeguard life, health, property and public welfare by regulating and controlling the design, quality of materials, construction, location, electrification, and maintenance of all signs and sign structures.

Under this municipal provision, the City grants or denies applications to erect signs, such as the billboard here. The City is charged with approving the sign's size, height, design, appearance, and location relative to the surrounding buildings and structures. All of the above responsibilities are uniquely governmental and are not characteristic of private proprietary enterprise.

Under TMC 2.05.020, the City reviews applications for electricity use, such as Sun's request for illumination of the billboard. In considering the request, the City assesses the practicality of the proposed use, giving due regard to the potential of hazard. Contrary to Dorsch's assertion that the City is engaged in selling and distributing electricity, the City acts more in a regulatory manner by initially determining whether the proposed use may be accomplished safely. Therefore, approving the electricity use to illuminate the billboard is a noncommercial, governmental function uniquely within the regulatory power of the municipal authority. As the City was not engaged in a proprietary activity, it is not subject to liability for negligence arising from its operations.

### *Ultrahazardous Activity*

▄ Dorsch next contends that the public duty doctrine

is inapplicable because the transmission of electricity is an ultrahazardous activity. *Campbell*, 85 Wn.2d 1. An ultrahazardous activity renders a party strictly liable for injuries arising therefrom due to the high risk inherent in the activity. *See New Meadows Holding Co. v. Washington Water Power Co.*, 102 Wn.2d 495, 500, 687 P.2d 212 (1984). But neither *Campbell* nor the cases cited therein stand for the proposition that the transmission of electricity is ultrahazardous, rendering a municipality strictly liable for injuries from that activity. Also, unlike the *Campbell* case, there is no evidence of any special relationship, knowledge, or notice of violations and subsequent failure to enforce a code. Dorsch's argument fails.

Dorsch's other arguments are relevant only if the public duty doctrine does not apply. Because we hold that the public duty doctrine applies, we do not address the other arguments.

Affirmed.

BRIDGEWATER and HUNT, JJ., concur.

Reconsideration denied October 30, 1998.

Review denied at 137 Wn.2d 1022 (1999).