[No. 55545-6-I. Division One. April 24, 2006.]

RUSSELL L. STIEFEL ET AL., *Appellants*, v. THE CITY OF KENT ET AL., *Respondents*.

*Satwant K. Atwal* (of *Gardner Bond Trabolsi & St. Louis, P.L.L.C.*), for appellants.

*Norm Maleng, Prosecuting Attorney,* and *David J. Eldred, Deputy,* for respondents City of Kent Fire Department, King County Fire Marshall, City of Kent Public Works, and King County.

*Stewart A. Estes* (of *Keating Bucklin & McCormack*), for respondent City of Kent.

¶1 PER CURIAM — The provision of fire protection services is a governmental rather than a propriety function. The public duty doctrine therefore bars any claims for the negligent failure to supply water for fire fighting purposes

or the negligent failure to enforce fire code provisions. Because appellants Russell and Bonnie Stiefel and United Services Automobile Association (the Stiefels) failed to establish any material factual dispute as to the application of the public duty doctrine, we affirm the trial court's dismissal of their claims against the city of Kent, the Kent Fire Department, and the Kent Public Works Department (the City) and against King County and the King County Fire Marshall (the County).

## FACTS

¶2 Viewed in the light most favorable to the Stiefels, the materials before the trial court establish the following sequence of events. During the early morning hours of April 22, 2001, the Stiefels' home in Kent was damaged when a fire spread from a neighbor's house. Water supply lines and fire hydrants in the area are part of the city of Kent water system, which supplies water to about 54,000 subscribers and maintains about 263 miles of water lines and 2,600 fire hydrants.

¶3 Immediately upon arrival at the scene, fire fighters from the Kent Fire Department connected a supply hose from the pumper to the nearest fire hydrant, which was located about 800 feet away from the fire. After pumping water on the neighbor's house for a brief period, fire fighters experienced an interruption in the water supply. The fire fighters needed several minutes to transfer the supply hose to a different engine before they could resume pumping water on the fire.

¶4 In his subsequent report, a Kent Fire Department investigator noted that fire suppression efforts were hampered when "a large amount of debris" in the supply hose blocked the intake screen of the pumper. According to the investigator, the time required to transfer the hose to a different engine allowed the fire "to grow exponentially" and spread to the Stiefels' house.

¶5 The debris was later analyzed and determined to be iron "tubercles." Brad Lake, water superintendent for the Kent Public Works Department, stated that tubercles generally develop at joints, connections, valves, and fire hydrants where bare metal is exposed and that the tubercles that caused the water interruption "could have come from anywhere in the immediate water supply system, and could have even been loosened by the fire department opening the fire hydrant."

¶6 On April 23, 2004, the Stiefels filed a complaint for damages against the City and County, alleging, among other things, that the defendants had negligently failed to maintain the fire hydrants near the Stiefel residence and had negligently failed to enforce relevant provisions of the City and King County codes. The City filed three separate motions for summary judgment on the issues of (1) duty; (2) standard of care, breach, and liability; and (3) separate liability for the Kent Public Works Department and Kent Fire Department. The County also moved for summary judgment.

¶7 In opposition to summary judgment, the Stiefels submitted declarations from Michael Fitz and James Milligan. Fitz, a civil engineer and volunteer fire fighter, asserted that fire hydrants should be flushed regularly to be kept in proper working order. He concluded that if the City had flushed its water lines in 2000 and 2001, the "tubercles that formed would have been flushed out of the water system that supplied the water hydrants."

¶8 Milligan submitted a videotape of the fire at the Stiefels' residence that showed the interruption of the water supply. Milligan had also been present in 1996 when Kent fire fighters responded to a house fire and connected a fire hose to the same hydrant near the Stiefels' home. He stated that he "was informed that the fire department had lost water pressure for a period of time."

¶9 Concluding that the public duty doctrine precluded any recovery for the Stiefels' claims, the trial court granted summary judgment in favor of the County on December

10, 2004. By separate order filed December 23, 2004, the trial court also granted summary judgment in favor of the City.

## STANDARD OF REVIEW

¶10 When reviewing a grant of summary judgment, this court undertakes the same inquiry as the trial court and considers the evidence and the reasonable inferences therefrom in the light most favorable to the nonmoving party. *Schaaf v. Highfield*, 127 Wn.2d 17, 21, 896 P.2d 665 (1995). Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." CR 56(c); *White v. State*, 131 Wn.2d 1, 9, 929 P.2d 396 (1997).

## DECISION

¶11 The Stiefels' primary contention on appeal is that the public duty doctrine does not shield the defendants from liability in this case because the operation and maintenance of a water system is a proprietary rather than a governmental function. They maintain that the City and County breached their duty to provide a "debris free water supply" to the City fire hydrants.

¶12 The public duty doctrine requires that a plaintiff seeking recovery from a public entity for negligence demonstrate that " 'the duty breached was owed to the injured person as an individual and was not merely the breach of an obligation owed to the public in general.' " *Taylor v. Stevens County*, 111 Wn.2d 159, 163, 759 P.2d 447 (1988) (quoting *J&B Dev. Co. v. King County*, 100 Wn.2d 299, 303, 669 P.2d 468 (1983)). The public duty doctrine reflects the policy that "legislative enactments for the public welfare should not be discouraged by subjecting a governmental entity to unlimited liability." *Taylor*, 111 Wn.2d at 170.

¶13 But the public duty doctrine applies only when the public entity is performing a governmental function. *Bailey v. Town of Forks*, 108 Wn.2d 262, 268, 737 P.2d 1257 (1987). If the entity is performing a proprietary function, it is held to the same duty of care as a private individual or corporation engaged in the same activity. *Dorsch v. City of Tacoma*, 92 Wn. App. 131, 135, 960 P.2d 489 (1998). A public entity acts in a proprietary rather than a governmental capacity when it engages in businesslike activities that are normally performed by private enterprise. *See Dorsch*, 92 Wn. App. at 135; *Russell v. City of Grandview*, 39 Wn.2d 551, 553, 236 P.2d 1061 (1951); *see also Hagerman v. City of Seattle*, 189 Wash. 694, 701, 66 P.2d 1152 (1937) (the test for distinguishing governmental from proprietary functions is "whether the act performed is for the common good of all, that is, for the public, or whether it is for the special benefit or profit of the corporate entity").

¶14 Proprietary functions include medical and psychiatric care, *Petersen v. State*, 100 Wn.2d 421, 671 P.2d 230 (1983), and operation of a sewage system, *Hayes v. City of Vancouver*, 61 Wash. 536, 112 P. 498 (1911). Governmental functions are those generally performed exclusively by governmental entities. *See, e.g.*, *Taylor*, 111 Wn.2d at 164-65 (building permits and inspections); *Hoffer v. State*, 110 Wn.2d 415, 422, 755 P.2d 781 (1988) (auditing public offices and registration of securities).

¶15 As the Stiefels correctly note, the general operation of a municipal water system is a proprietary function. *Russell*, 39 Wn.2d at 553. In *Russell*, the court upheld an award of damages for the explosion that resulted when the municipal water system advised residents to release the pressure from combustible gas in the domestic water supply by opening the faucets in the home. But *Russell* does not control the issue here because the Stiefels are not alleging any deficiency in the delivery of the domestic water supply, but rather the negligent operation and maintenance of City and County fire protection services. It is well established that the creation, maintenance,

and operation of a fire department and all reasonably incident duties are a governmental function. *See Lakoduk v. Cruger*, 47 Wn.2d 286, 289, 287 P.2d 338 (1955) (fire fighter acting in governmental capacity when responding to call for first-aid assistance); *see also Babcock v. Mason County Fire Dist. No. 6*, 144 Wn.2d 774, 777, 30 P.3d 1261 (2001) (public duty doctrine provides immunity to fire fighters in the performance of their duties).

¶16 The fact that the same water supply line serves both fire hydrants and the domestic water system does not convert a fundamentally governmental function into a proprietary one. The *Russell* court acknowledged this principle when it noted the plaintiffs were not challenging the municipality's use of water to provide fire protection. *Russell*, 39 Wn.2d at 553. More recently, our Supreme Court has recognized that in providing certain utilities, a municipality may act in both a governmental and proprietary capacity. *See Okeson v. City of Seattle*, 150 Wn.2d 540, 550-51, 78 P.3d 1279 (2003) (municipal electric utility is a proprietary function; provision and maintenance of streetlights is a governmental function). Consequently, where a public entity acts in a dual capacity, application of the public duty doctrine depends on the particular function being challenged. *Goggin v. City of Seattle*, 48 Wn.2d 894, 897, 297 P.2d 602 (1956) (construction and maintenance of city streets is a proprietary function; supervision and control of streets is a governmental function).

¶17 The general rule is that supplying water for public purposes, such as fire protection services, is a governmental function and that a municipality is not liable for damages for the negligent failure to supply water for extinguishing fires. 18A Eugene McQuillin, The Law of Municipal Corporations § 53.105, at 192-93 (3d ed. 2002). The Stiefels have not submitted any authority or legal argument to the contrary. Because their claims are directed solely to the governmental function of fire protection services, including the incidental delivery of water through fire hydrants, the claims are barred by the public duty doctrine.

¶18 The Stiefels' reliance on *Shannon v. City of Grand Coulee*, 7 Wn. App. 919, 503 P.2d 760 (1972), is misplaced. In *Grand Coulee*, fire fighters responding to a fire at the plaintiff's restaurant discovered that the nearest hydrant was dry, a circumstance that caused a delay in getting water to the fire. It was later determined that the valve at the base of the hydrant had apparently been closed for several years after the city allowed a lumber company to tap into the water line. On appeal, the court held that the city had a statutory duty to inspect the water system regularly to insure an adequate supply of water to the fire hydrants and that the city had breached that duty—as a matter of law—by failing to inspect the system for three years. *Grand Coulee*, 7 Wn. App. at 922.

¶19 But *Grand Coulee* predates the development of the public duty doctrine in this state. Moreover, the court's analysis does not consider the well-established distinctions between proprietary and governmental functions. Finally, the court's determination of a statutory duty rests solely on a brief reference to RCW 80.28.010(2), which requires every water system to supply service that is "safe, adequate and efficient, and in all respects just and reasonable." This provision is part of the statutory scheme governing the Washington Utilities and Transportation Commission (WUTC), and the *Shannon* court's analysis fails to address other provisions limiting WUTC regulation of municipal water systems. *See* RCW 80.04.500 (exempting municipal utilities from WUTC control). For these reasons, *Grand Coulee* provides no support for the Stiefels' arguments in this case.

¶20 The Stiefels next contend that the "statutory intent" exception to the public duty doctrine applies. The public duty doctrine does not bar a plaintiff's action if a regulatory statute or code provision "evidences a clear legislative intent to identify and protect a particular and circumscribed class of persons." *Ravenscroft v. Wash. Water Power Co.*, 136 Wn.2d 911, 929, 969 P.2d 75 (1998). For this exception to apply, however, "the regulation establishing a

duty must intend to identify and protect a particular and circumscribed class of persons, and this intent must be clearly expressed within the provision—it will not be implied." *Ravenscroft*, 136 Wn.2d at 930.

¶21 Neither Title 80 RCW nor provisions of the Kent City Code governing fire hydrants and the enforcement of the municipal fire code, cited by the Stiefels, evidence an intent to protect a particular and circumscribed class of persons with respect to the provision of fire protection services. Because these regulatory provisions are clearly aimed at the public at large, the legislative intent exception does not apply. *See Baerlein v. State*, 92 Wn.2d 229, 233, 595 P.2d 930 (1979) (state securities act intended to protect investing public, not individual investors); *Taylor*, 111 Wn.2d at 166 (state building code intended to protect general public, not specific class of building occupants). The Stiefels' contention that the City has been aware of the defective fire hydrant for at least five years is both irrelevant to a determination of whether the legislative intent exception applies and unsupported by any evidence in the record. James Milligan's statement that he was "informed" the fire department had "lost water pressure for a period of time" in 1996 provides no admissible evidence identifying the reason for the alleged loss of pressure.

¶22 Finally, citing RCW 19.27.110, the Stiefels assert that the County had a duty to enforce the fire code in the city of Kent. Former RCW 19.27.110 (1975) provides that each county government "shall administer and enforce the uniform fire code in the *unincorporated* areas of the county." (Emphasis added.) The Stiefels maintain that the statute's silence as to incorporated areas such as the city of Kent does not relieve the County of a "concurrent" duty. But the Stiefels have not cited any principle of statutory construction that would permit such an interpretation, which would require us to find a portion of RCW 19.27.110 to be superfluous. Because the Stiefels have failed to cite any relevant authority to support their claim that the County had a duty to enforce the fire code in incorporated areas, we decline to consider it.

¶23 Because there are no material disputed facts as to the application of the public duty doctrine, the trial court did not err in entering summary judgment in favor of the City and the County.

¶24 Affirmed.