# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| HUGH K. SISLEY and MARTHA E. SISLEY, both individually and on behalf of their marital community,<br><br>Appellants,<br><br>v.<br><br>CITY OF SEATTLE, a municipal corporation,<br><br>Respondent. | NOS. 69827-3-I<br>69828-1-I<br>(Consolidated Cases)<br><br>DIVISION ONE<br><br>UNPUBLISHED OPINION<br><br>FILED: February 3, 2014 |

LAU, J. — In this multi-decade long dispute over the City of Seattle's housing code enforcement actions involving numerous residential rental properties owned by Hugh and Martha Sisley, the Sisleys appeal the trial court's partial summary judgment order dismissing their state constitutional, tort, and certificate of release claims. They do not appeal the judgment entered after the jury's adverse verdict on their contract claims or the denial of their new trial motion. Finding no error, we affirm the partial summary judgment order of dismissal.

## FACTS

Hugh and Martha Sisley own numerous Seattle residential properties that have been the subject of several hundred municipal code enforcement cases, dating to the

1980s. In May 2010, the Sisleys filed a complaint for damages. By amended complaint, they alleged that the City violated state constitutional provisions governing privileges and immunities, due process, equal protection, and privacy, and engaged in "tortious conduct," by unlawfully or improperly (1) imposing vacant building monitoring fees, (2) imposing tenant relocation assistance fees, (3) transferring tenant utility bill arrearages to their home account, (4) installing or reinstalling water meters without consent, and (5) entering and searching their properties. They also alleged that City municipal court judgments entered in two code enforcement cases involving 6317 15th Avenue NE and 6515 16th Avenue NE were "excessive and in violation of state law." The municipal court judgments totaled $368,000 and $247,400.[1] Each judgment authorized continuing per diem penalties for uncorrected violations.

The Sisleys filed a motion "seeking enforcement of defendant's procedures for confirming compliance with defendant's housing code." They asked the court to find that they "timely remedied the claimed Housing Code violations for the properties located at 6515 16th Ave. N.E. and 6317 15th Ave. N.E. and that the City has released them from all claims for the property located at 6317 15th Ave. N.E." They argued that a certificate of release issued by the City with respect to the 6317 15th Avenue NE code enforcement action "discharged and extinguished" the municipal court judgment and "all accumulated fines." Br. of Appellant at 43.

---

[1] In October 2011, this court upheld the municipal court judgments over the Sisleys' claim that the penalty amounts exceeded the $75,000 claim limit applicable to district courts under RCW 3.66.020. City of Seattle v. Sisley, 164 Wn. App. 261, 263 P.3d 610 (2011), review denied, 173 Wn.2d 1022 (2012).

On the City's summary judgment motion, the trial court ruled that (1) all state constitutional claims for money damages failed in the absence of augmentative legislation, (2) the public duty doctrine barred relief on all claims arising from the "City's housing and zoning enforcement actions including tenant relocation assistance and vacant building monitoring," (3) res judicata barred the Sisleys' excessive penalty argument, and (4) no genuine issue of material fact remained as to whether a "certificate of release" issued by the City in a code enforcement case involving the Sisley-owned property at 6317 15th Avenue NE released accrued civil penalties. The court also dismissed the Sisleys' tortious interference claim.

The Sisleys filed a second amended complaint alleging that (1) the City's utility bill collection actions breached express and implied contractual duties and (2) the City "unlawfully and tortiously refused to issue Certificates of Compliance" recognizing correction of code violations at two Sisley-owned properties. A jury rejected both claims, and on December 4, 2012, the trial court entered judgment for the City.

The Sisleys do not challenge the jury's verdict or the trial court's denial of their motion for a new trial. They appeal the trial court's partial summary judgment order dismissing the state constitutional, tort, and certificate of release claims.

## ANALYSIS

We review a grant of summary judgment de novo, construing the facts and all reasonable inferences in the light most favorable to the nonmoving party. Hearst Commc'ns, Inc. v. Seattle Times Co., 154 Wn.2d 493, 501, 115 P.3d 262 (2005). We will affirm the trial court's ruling "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine

issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." CR 56(c). The nonmoving party may not rely on speculation or argumentative assertions that unresolved factual issues remain. Seven Gables Corp. v. MGM/UA Entm't Co., 106 Wn.2d 1, 13, 721 P.2d 1 (1986). Further, we will not look beyond the evidence and issues called to the trial court's attention. RAP 9.12. We may, however, affirm on any basis supported by the summary judgment record. Gontmakher v. City of Bellevue, 120 Wn. App. 365, 369, 85 P.3d 926 (2004).

State Constitutional Claims

The Sisleys sought money damages for alleged violations of various state constitutional provisions. Washington law contains no counterpart to 42 U.S.C. § 1983, which creates a civil cause of action for violations of the United States Constitution by persons acting under color of state law. Washington courts have "consistently rejected invitations to establish a cause of action for damages based upon constitutional violations 'without the aid of augmentative legislation.'" Blinka v. Wash. State Bar Ass'n, 109 Wn. App. 575, 591, 36 P.3d 1094 (2001) (quoting Sys. Amusement, Inc. v. State, 7 Wn. App. 516, 517, 500 P.2d 1253 (1972)); see also Reid v. Pierce County, 136 Wn.2d 195, 213-14, 961 P.2d 333 (1998) (declining to recognize civil action for damages premised on violation of state constitutional right to privacy). Because the Sisleys identified no augmentative legislation supporting their claims for money damages, this claim fails.[2]

---

[2] The Sisleys' remaining contentions are unpersuasive. The Sisleys voluntarily dismissed their federal law claims, leaving no basis for a section 1983 action in state court. And their public policy argument is up to the legislature, not the courts.

Tort Claims

The Sisleys also sought money damages based on allegations that the City unlawfully imposed vacant building monitoring and tenant relocation assistance fees under the authority of its Housing and Building Maintenance Code.[3] The trial court dismissed this claim on partial summary judgment, ruling that the public duty doctrine foreclosed relief.

The City's Housing and Building Maintenance Code requires quarterly inspection of vacant buildings that are found to violate minimum standards. SMC 22.206.200. The City may impose vacant building monitoring fees. SMC 22.206.200. The code also authorizes the issuance of emergency orders directing closure of buildings found to pose imminent health or safety risks. SMC 22.206.260. The City may seek reimbursement for relocation assistance paid to displaced tenants. SMC 22.206.260.

Here, the record establishes that the City imposed vacant building monitoring fees in connection with Sisley-owned properties at 1322 NE 65th Street and 6418 Brooklyn Ave NE.[4] The fees totaled $604. In both cases, the City suspended collection efforts or reversed the fees.[5] The record also establishes that the City imposed tenant

---

[3] Seattle Municipal Code chapters 22.200 - 22.208.

[4] The Sisleys advise that their claim relating to vacant building monitoring fees "involves properties located at 1509 NE 66th Street, 6418 Brooklyn Avenue NE, and 1322 NE 65th Street." Br. of Appellant at 14 n.13. They raise no issue on appeal with regard to 1509 NE 66th Street.

[5] The City reversed the fees associated with 6418 Brooklyn Avenue NE after a City employee "determined that City code required a notice of violation or Director's order be issued before vacant building monitoring fees could be sought." Resp't's Br. at 10. The City now claims that determination was erroneous. We are not asked to review the merits of this issue.

relocation assistance fees after issuing a series of emergency orders directing the closure of the Sisley-owned property at 6526 15th Ave NE due to hazardous conditions. The Sisleys challenged that action, and the City sued to recover the fees. That suit was one of four alleging failure to pay tenant relocation assistance fees. The City states it "exercised prosecutorial discretion" and dismissed three of the cases. Resp't's Br. at 12. In the fourth, the City obtained a final judgment. The Sisleys never paid the fees.

"In a negligence action, whether an actionable duty was owed to the plaintiff is a threshold determination." Munich v. Skagit Emergency Commc'n Ctr., 175 Wn.2d 871, 877, 288 P.3d 328 (2012). Our review is de novo. Munich, 175 Wn.2d at 877.

> When the defendant in a negligence action is a governmental entity, the public duty doctrine provides that a plaintiff must show the duty breached was owed to him or her in particular, and was not the breach of an obligation owed to the public in general, i.e., a duty owed to all is a duty owed to none.

Munich, 175 Wn.2d at 878. The public duty doctrine does not apply when the entity acts in a proprietary capacity, as opposed to a governmental capacity—that is, when the entity "engages in businesslike activities that are normally performed by private enterprise." Stiefel v. City of Kent, 132 Wn. App. 523, 529, 132 P.3d 1111 (2006). "The principal test in distinguishing governmental functions from proprietary functions is whether the act performed is for the common good of all, or whether it is for the special benefit or profit of the corporate entity." Okeson v. City of Seattle, 150 Wn.2d 540, 550, 78 P.3d 1279 (2003); see, e.g., Russell v. City of Grandview, 39 Wn.2d 551, 553, 236 P.2d 1061 (1951) (city engaged in a proprietary function when operating a municipal water plant and distribution system); Borden v. City of Olympia, 113 Wn. App. 359, 371, 53 P.3d 1020 (2002) (city engaged in a proprietary function when it "helped private

developers design, engineer, and pay for a new stormwater drainage system."); City of Mercer Island v. Steinmann, 9 Wn. App. 479, 482, 513 P.2d 80 (1973) (city engaged in a governmental capacity when administering zoning ordinance). Another distinguishing factor is whether the act involves the performance of "uniquely governmental duties." Hoffer v. State, 110 Wn.2d 415, 422, 755 P.2d 781 (1988) (state auditor acted in a governmental capacity when auditing public offices).

The Sisleys argue that the public duty doctrine does not apply because the City acted in a proprietary capacity when it imposed vacant building monitoring and tenant relocation assistance fees under the authority of its housing code. Br. of Appellant at 38-39. To the contrary, our Supreme Court has recognized a "traditional public duty rule" holding that "building codes impose duties that are owed to the public at large." Taylor v. Stevens County, 111 Wn.2d 159, 165, 759 P.2d 447 (1988). Consistent with this rule, the City's Housing and Building Maintenance Code states:

> The express purpose of this Code is to provide for and promote the health, safety and welfare of the general public, and not to protect individuals or create or otherwise establish or designate any particular class or group of persons who will or should be especially protected or benefited by the terms of this Code.

SMC 22.200.020(G). There was nothing evidently "businesslike" about the City's efforts to enforce this code. Stiefel, 132 Wn. App. at 529. The summary judgment record contains no evidence that vacant building monitoring, for purposes of code compliance, and tenant relocation assistance are activities "normally performed by private enterprise." Stiefel, 132 Wn. App. at 529. We conclude the City acted in a governmental capacity and the public duty doctrine bars relief.

The Sisleys argue in the alternative that the "special relationship" exception applies. Br. of Appellant at 39-41. Under the special relationship exception, an entity may incur liability "if the plaintiff can prove circumstances setting his or her relationship with the government apart from that of the general public." Cummins v. Lewis County, 156 Wn.2d 844, 854, 133 P.3d 458 (2006). "A special relationship arises where (1) there is direct contact or privity between the public official and the injured plaintiff which sets the latter apart from the general public, and (2) there are express assurances given by a public official, which (3) gives rise to justifiable reliance on the part of the plaintiff." Taylor, 111 Wn.2d at 166. The exception "requires evidence of the plaintiff's inquiries and the [public entity's] specific assurances." Moore v. Wayman, 85 Wn. App. 710, 721, 934 P.2d 707 (1997); see, e.g., Sundberg v. Evans, 78 Wn. App. 616, 624, 897 P.2d 1285 (1995) (record, which included plaintiff's affidavit and transcript of county employee's deposition, raised genuine issues of material fact regarding applicability of special relationship exception).

The Sisleys claim that the City "made numerous promises" over the years, and that the summary judgment record "created a factual issue as to whether the City was in [a] special relationship with Mr. and Mrs. Sisley." Br. of Appellant at 40-41. Contrary to RAP 10.3(a)(6), they fail to cite the record. "It is not the function of trial or appellate courts to do counsel's thinking and briefing." Orwick v. City of Seattle, 103 Wn.2d 249, 256, 692 P.2d 793 (1984). Nonetheless, our review of the record reveals no evidence that the City made specific assurances regarding vacant building monitoring or tenant relocation assistance fees. This claim fails.

The Sisleys also contend that the public duty doctrine does not apply to their tortious interference claim. See Vergeson v. Kitsap County, 145 Wn. App. 526, 543-44, 186 P.3d 1140 (2008) (public duty doctrine does not apply to intentional torts). They argue, "In this case, the City knew of Mr. and Mrs. Sisleys' business relationships involving their properties and has intentionally and wrongfully interfered with these relationships by engaging in repeated and protracted investigations that interrupted their business and scared away clients." Br. of Appellant at 39 n.22.

The Sisleys failed to meet their burden to raise a genuine issue of material fact regarding the elements of tortious interference: (1) the existence of a valid contractual relationship or business expectancy, (2) the City's knowledge of that relationship or expectancy, (3) intentional interference inducing or causing a breach or termination of the relationship or expectancy, (4) proof that the City interfered for an improper purpose or used improper means, and (5) resultant damage.[6] Hudson v. City of Wenatchee, 94 Wn. App. 990, 998, 974 P.2d 342 (1999). The claim is premised on a few sentences of unsupported argument. For example, the Sisleys argue the City "interrupted their business and scared away clients."[7] Br. of Appellant at 39 n.22. The tortious interference claim fails.

---

[6] The trial court ruled, "The City's enforcement of its housing and zoning codes did not give rise to a claim of tortious interference with business expectations when the City's interest in protecting the public's health, safety, and welfare outweighs the plaintiffs' rental interest." We may affirm the trial court on any basis supported by the summary judgment record. Gontmakher, 120 Wn. App. at 369.

[7] The Sisleys cite the trial testimony of city employee Jill Vanneman to support their contention that "the City has admitted that it subjects Mr. and Mrs. Sisley to more oversight and enforcement action than anyone else in the City." Br. of Appellant at 27.

For similar reasons, the Sisleys' remaining "negligence-based tort claims" also fail. Br. of Appellant at 37 (formatting omitted). Their entire argument consists of two paragraphs:

> The City negligently managed Mr. and Mrs. Sisleys' personal municipal account. "Negligence consists in the doing of an act which a reasonable man would not have done, or in the failure to do an act which a reasonable man would have done under similar circumstances." Sys. Tank Lines v. Dixon, 47 Wn. 2d 147, 151, 286 P.2d 704, 706 (1955).
> A municipality has a duty to exercise reasonable care in the course of enforcing the Housing Code and operating the electrical utility and water services. As set forth above, the City has breached this duty. The City has been hounding Mr. and Mrs. Sisley for years and even assuming arguendo the more recent mismanagement of their municipal accounts is simply bureaucratic obstinacy or incompetence, Mr. and Mrs. Sisley have stated a cause of action for negligence because this perverse course of conduct is unreasonable and economically harmful to their business and livelihood.

Br. of Appellant at 37. These "arguments" consist of nothing more than a list of unsupported complaints about the City. Counsel's arguments are not evidence. Bravo v. Dolsen Companies, 71 Wn. App. 769, 777, 862 P.2d 623 (1993) (unsworn allegation of fact in appellate brief falls outside materials that court can consider), reversed on other grounds, 125 Wn.2d 745, 888 P.2d 147 (1995). The Sisleys fail to even suggest which facts raise a material fact issue. We decline to "comb the record" to find support they failed to provide.[8] Fishburn v. Pierce County Planning & Land Servs. Dep't, 161 Wn. App. 452, 468, 250 P.3d 146 (2011).

---

When reviewing a grant of summary judgment, "the appellate court will consider only evidence and issues called to the attention of the trial court." RAP 9.12.

[8] Even if the Sisleys identified a genuine issue of material fact, we question whether they are entitled to further proceedings on their "negligence-based tort claims." Br. of Appellant at 37 (formatting omitted). On partial summary judgment, the trial court ruled, "The supply of power by City Light to the plaintiffs' properties is governed by

The Sisleys also assert that the City "improperly installed water services."[9] Br. of Appellant at 17 (formatting omitted). The trial court ruled, "There is no genuine issue of material fact that the property at 6544 16th Ave. NE was occupied after the City reinstalled a water meter at the property, and the plaintiffs were required to provide and pay for water after the individuals occupied the property." The Sisleys now claim the trial court "incorrectly" found the property was occupied. Br. of Appellant at 17. Trial court summary judgment findings are superfluous. Hamilton v. Huggins, 70 Wn. App. 842, 848, 855 P.2d 1216 (1993). Our review of this issue is de novo. The record evidence indicates no material issues of fact. The trial court properly granted summary judgment.

### Penalty Judgments—Eighth Amendment Excessive Fines Clause

The Sisleys also sought money damages premised on the two municipal court judgments discussed above. They claim the judgments violate the Eighth Amendment's excessive fines clause and thus entitle them to sue for money damages.[10] They assert the penalties were constitutionally excessive.[11]

---

contract." The Sisleys assigned no error to this ruling. Arguably, they have waived all tort-based claims related to the City's "supply of power."

[9] This assertion appears in the section of the Sisleys' opening brief titled "Statement of the Case." It is unclear whether the assertion is part of the appeal and, if so, to which assignment of error it pertains. See RAP 10.3(a) ("The brief of the appellant or [respondent] should contain . . . (5) Statement of the Case. A fair statement of the facts and procedure relevant to the issues presented for review, without argument.") (emphasis added).

[10] "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. Const. amend VIII. In their opening brief, the Sisleys state, "Although Article I, § 14 of the Washington Constitution has an excessive

This claim fails on several grounds. First, the Sisleys cite no authority authorizing a money damages claim based on an alleged excessive fines clause violation. They rely on United States v. Bajakajian, 524 U.S. 321, 118 S. Ct. 2028, 141 L. Ed. 2d 314 (1998) (reviewing forfeiture imposed under federal statutes), and State v. WWJ Corp., 138 Wn.2d 595, 980 P.2d 1257 (1999) (declining to review untimely argument regarding penalty imposed under state consumer protection statutes), but neither case involved a money damages claim based on an alleged excessive fines clause violation.

Next, the United States Supreme Court has determined that the excessive fines clause "'limits the government's power to extract payments, whether in cash or in kind, as punishment for some offense.'" Bajakajian, 524 U.S. at 328 (internal quotation marks omitted) (quoting Austin v. United States, 509 U.S. 602, 609-10, 113 S. Ct. 2801, 125 L. Ed. 2d 488 (1993)). The Sisleys fail to address whether the enforcement penalties constitute punishment. See State v. Frodert, 84 Wn. App. 20, 29-30, 924 P.2d 933 (1996) ("As with the double jeopardy clause, the excessive fines clause only protects against 'punishment.'").

---

fines clause, this memo analyzes the applicability of only the Eighth Amendment of the U.S. Constitution." Br. of Appellant at 32 n.20.

[11] As a preliminary matter, our record does not reflect precisely how much money the Sisleys presently owe the City. The Sisleys assert, "Today, the total fines presently exceed two million dollars—more than $2,500,000, and the fines grow by $1,600 a day." Br. of Appellant at 16. They do not explain how they calculated this figure.

Finally, to the extent this claim arises under 42 U.S.C. § 1983, it fails because the Sisleys dismissed all federal claims after the City removed the case to federal court.[12]

The trial court properly granted summary judgment dismissal.

Certificate of Release

The Sisleys contend that the trial court erred in ruling that a City-issued certificate of release released no accrued civil penalties with respect to code violations at 6317 15th Ave NE. Br. of Appellant at 41. The certificate stated:

> The above described property [6317 15th Ave NE] is released from all requirements of the NOTICE OF VIOLATION of the Seattle Municipal Code 22.206 dated June 27, 2008 for the following reasons:
> HOUSE WAS DEMOLISHED FOR REDEVELOPMENT.

(Boldface omitted.) The City issued the certificate on August 3, 2012, nearly three years after the municipal court entered a final $368,000 judgment in the case.

The Sisleys argue that the certificate is a binding contract under which "the existing judgment and all of the accumulated fines have been discharged and extinguished." Br. of Appellant at 43. They add, "The meaning of the City's 'Certificate of Release' should be determined and construed in the same manner as other contractual documents." Reply Br. of Appellant at 2. Neither the record nor reasoned argument supports these contentions. Among other elements, an enforceable contract requires an offer, acceptance, and consideration. FDIC v. Uribe, Inc., 171 Wn. App.

---

[12] Given our resolution of the excessive fines claim, we need not address the claim or issue preclusion question. However, we question whether the doctrines of res judicata or collateral estoppel apply to bar the Sisleys' Eighth Amendment excessive fines claim involving the Seattle Municipal Court judgments, given the protracted litigation history in this case involving prior near identical issues and claims between these parties.

683, 688, 287 P.3d 694 (2012). As a matter of law, the certificate of release is not a contract.

The dispositive question is whether the certificate satisfied or voided the City's judgment. The Sisleys offer no plausible theory as to how satisfaction or voiding occurred. By its terms, the certificate releases the "above described property" from the requirements of the notice of violation. During her deposition, City employee Carol Anderson agreed with the statement that "the Certificate of Release means that the person who received the Notice of Violation is no longer obligated to take the corrective action . . . ." She did not testify that the certificate satisfies or voids existing penalty judgments. City employee Diane Davis explained via deposition that the City might issue a certificate to clear title:

> Q. Have you ever heard of a Certificate of Release?
> A. Yes.
> Q. What is your understanding [of] what that is?
> A. That is a document that is occasionally issued when there's some reason to suspend the Notice of Violation. The usual time we would issue one of those is if there was a, there was a violation on the record and the property was being transferred and needed to clear the title in order for the title company to accept the transfer. A Certificate of Release might be issued in that circumstance preserving the rights or preserving the—making it clear the violation still exists, but that it's being issued so that title can be transferred; in other words, it's not saying it's in compliance. It's specifically when we can't determine compliance that we would issue a Certificate of Release.

The certificate itself states, "You are strongly encouraged to record this Certificate with King County to ensure a clear title to this property." And while the certificate identifies "HUGH K AND MARTHA E SISLEY" as the property's owners, it nowhere references the City's $368,000 municipal court judgment. On this record, the trial court properly

-14-

found no genuine issue of material fact existed as to the enforceability of the judgment or the underlying penalties.

CONCLUSION

Because the trial court properly granted partial summary judgment in favor of the City on all claims, we affirm the partial summary judgment order dismissing the constitutional, tort, and certificate of release claims.

_____

WE CONCUR:

_____
Cox, J.

_____
Becker, J.