FILED
COURT OF APPEALS
DIVISION II

2015 JUL 21 AM 9: 25

STATE OF WASHINGTON

BY_____ DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| SUNSHINE HEIFERS, LLC, an Arizona limited liability company, | No. 46322-9-II |
| Appellant, | |
| v. | |
| WASHINGTON STATE DEPARTMENT OF AGRICULTURE; & DAN NEWHOUSE, in his capacity as the Director for the Washington State Department of Agriculture, | PUBLISHED OPINION |
| Respondents. | |

WORSWICK, P.J. — Sunshine Heifers, LLC sued the Washington State Department of Agriculture, claiming damages arising from negligent cattle inspections. Sunshine appeals the superior court's order granting summary judgment to the Department and denying partial summary judgment to Sunshine. Sunshine argues that because the cattle inspections constitute a proprietary function, the superior court erred by ruling that the public duty doctrine precluded the Department's liability for negligent cattle inspections. We hold that the Department's cattle inspections constitute a governmental function, rather than a proprietary function. Thus, the public duty doctrine precludes the Department's liability for its negligent cattle inspections. Accordingly, we affirm the superior court's grant of summary judgment to the Department and its denial of partial summary judgment to Sunshine.

FACTS

A.  *The Department's Cattle Inspections*

Pursuant to chapter 16.57 RCW, the Department maintains an exclusive and uniform registry of cattle brands.[1] RCW 16.57.020, .050. Any brand placed on cattle must be recorded with the Department. RCW 16.57.020, .050. Properly recorded cattle brands provide prima facie evidence of the cattle's owner. RCW 16.57.100.

Chapter 16.57 RCW authorizes the Department to conduct mandatory cattle inspections to determine ownership of the cattle. RCW 16.57.010(10), .267; former RCW 16.57.160 (2013). To empower the Department to conduct these inspections, chapter 16.57 RCW authorizes the Department to obtain a warrant to compel entry into livestock markets and slaughterhouses and to set up road blocks to stop vehicles containing cattle. RCW 16.57.170-180, .245.

Additionally, cattle normally must be inspected by the Department before they are moved out of Washington State. *See* RCW 16.57.260; WAC 16-610-035. But the Department has an agreement with certain other states, including Oregon, where the Department authorizes the cattle to pass to that state's public livestock market without an inspection, contingent upon the Department inspecting the cattle at the state's public market prior to sale. WAC 16-610-035(2).

If a cattle seller puts cattle up for sale and the Department inspection reveals that the cattle seller lacks sufficient proof of ownership, the Department impounds the cattle. RCW 16.57.290. Where the Department suspects theft, the Department immediately investigates ownership of the impounded cattle. RCW 16.57.290. Otherwise, the Department allows the

---

[1] Under chapter 16.57 RCW, cattle is a subset of livestock. RCW 16.57.010(9).

cattle to be sold but retains the proceeds until sufficient proof of ownership is presented. RCW 16.57.290. Where such a sale of impounded cattle occurs at a licensed public livestock market, the market's licensee holds onto the sale proceeds for a reasonable period, not to exceed 30 days, before the proceeds go to the Department. RCW 16.57.300. The Department may make warrantless arrests of "any person . . . whom the director has reason to believe is guilty of transporting, holding, selling, or slaughtering stolen livestock." RCW 16.57.210.

When the Department conducts a cattle inspection, it charges an inspection fee in an amount set by RCW 16.57.220.[2] These fees are "deposited in an account in the agricultural local fund and used to carry out the purposes of [chapter 16.57 RCW], except as otherwise provided." RCW 16.57.370.

B.    *The Dana Group, LLC's Lease of Sunshine Heifers' Cattle*

In 2008, the Dana Group[3] contracted to lease cattle from Sunshine. The Dana Group's performance was secured with an agreement that gave Sunshine a security interest in all cattle owned or leased by the Dana Group. The Dana Group defaulted on the lease in 2009 and remained in default throughout this litigation.

C.    *The Department's Inspections of the Dana Group's Transported Cattle in Oregon*

Between November of 2008 and February of 2010, the Dana Group transported cattle through Washington and to Oregon for sale at an Oregon licensed public livestock market,

---

[2] The cattle inspection fee is the larger of a set amount per head ($1.10 if properly branded, $1.60 otherwise) or the time and mileage fee ($17.00 per hour plus the current mileage rate). RCW 16.57.220(1)-(2), (8).

[3] Gary and Donna Sytsma own the Dana Group. For purposes of clarity, we refer to the Dana Group and the Sytsmas collectively as the Dana Group.

3

without Sunshine's knowledge or consent. Some of the transported cattle had Sunshine's brand, which was recorded with the Department. The remaining transported cattle were subject to Sunshine's security interest in the Dana Group's cattle.

The Department allowed the Dana Group to move the transported cattle out of Washington and to the Oregon public market, where the Department inspected the transported cattle prior to sale. The Dana Group asserted that it owned all of the transported cattle. After inspection, the Department allowed the transported cattle to be sold without impounding the cattle or the sale proceeds. The public market sold the cattle and distributed the proceeds to the Dana Group.[4]

D.  *Sunshine's Complaint Against the Department and Cross Summary Judgment Motions*

Sunshine sued the Department for negligence and breach of fiduciary duty, alleging that by improperly inspecting the transported cattle, the Department erroneously allowed the Dana Group to wrongfully sell the transported cattle and acquire the sale proceeds. The Department moved for summary judgment on both claims. Concerning the negligence claim, the Department argued that because its cattle inspections constitute a governmental function, the public duty doctrine precluded the Department's liability for negligent cattle inspections. Sunshine moved for partial summary judgment on the issue of whether the Department owed Sunshine a duty.

The superior court granted summary judgment to the Department and denied Sunshine partial summary judgment. The superior court ruled that the public duty doctrine precluded the Department's liability for negligent cattle inspections and that the Department owed Sunshine no

---

[4] In February of 2010, the Department began impounding the sale proceeds from the Dana Group's cattle sales.

No. 46322-9-II

fiduciary duty. Sunshine appeals, challenging only the superior court's ruling that the public duty doctrine precluded the Department's liability for negligent cattle inspections.

ANALYSIS

Sunshine argues that because the Department's cattle inspections constitute a proprietary function, the public duty doctrine does not apply. We disagree.

## I. LEGAL STANDARDS

A superior court should grant summary judgment if it determines, after viewing the entire record and drawing all reasonable inferences in favor of the nonmoving party, that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law. CR 56(c); *Lyons v. U.S. Bank NA*, 181 Wn.2d 775, 783, 336 P.3d 1142 (2014). We review a summary judgment order de novo from the same position as the superior court. *Morin v. Harrell*, 161 Wn.2d 226, 230, 164 P.3d 495 (2007). We consider all evidence submitted and all reasonable inferences from the evidence in the light most favorable to the nonmoving party. *Lyons*, 181 Wn.2d at 783. We also review statutory interpretation de novo, giving effect to the statute's plain meaning. *O.S.T. v. Regence BlueShield*, 181 Wn.2d 691, 696, 335 P.3d 416 (2014).

The threshold determination in a negligence action is whether the defendant owes a duty of care to the plaintiff, a question we review de novo. *Munich v. Skagit Emergency Commc'ns Ctr.*, 175 Wn.2d 871, 877, 288 P.3d 328 (2012). Government entities are liable for damages arising out of their tortious conduct, or the tortious conduct of their employees, "'to the same extent as if they were a private person or corporation.'" *Cummins v. Lewis County*, 156 Wn.2d 844, 853, 133 P.3d 459 (2006) (quoting RCW 4.96.010(1)). But under the public duty doctrine,

5

the government may be held liable for negligence only if it breaches a duty owed to a particular individual, rather than a duty owed to the general public. *Osborn v. Mason County*, 157 Wn.2d 18, 27, 134 P.3d 197 (2006). The plaintiff in a negligence action has the burden of establishing that a government entity has breached a duty owed to them individually, rather than to the public at large. *Babcock v. Mason County Fire Dist. No. 6*, 144 Wn.2d 774, 785, 30 P.3d 1261 (2001).

"The public duty doctrine reflects the policy that 'legislative enactments for the public welfare should not be discouraged by subjecting a governmental entity to unlimited liability.'" *Stiefel v. City of Kent*, 132 Wn. App. 523, 528, 132 P.3d 1111 (2006) (quoting *Taylor v. Stevens County*, 111 Wn.2d 159, 170, 759 P.2d 447 (1988)). Accordingly, governmental actions ensuring compliance with the law should not cause the government to absorb liability for private individuals' violation of those laws. *See Taylor*, 111 Wn.2d at 170.

But the public duty doctrine does not apply when the government is performing a proprietary function, rather than a governmental function. *Fabre v. Town of Ruston*, 180 Wn. App. 150, 159, 321 P.3d 1208 (2014). If a government entity is performing a proprietary function, it has an identical duty of care to a private individual or institution engaging in the same activity. *Dorsch v. City of Tacoma*, 92 Wn. App. 131, 135, 960 P.2d 489 (1998).

"The principal test in distinguishing governmental functions from proprietary functions is whether the act performed is for the common good of all, or whether it is for the special benefit or profit of the corporate entity." *Okeson v. City of Seattle*, 150 Wn.2d 540, 550, 78 P.3d 1279 (2003). Proprietary functions are "'businesslike activities that are normally performed by private enterprise.'" *Fabre*, 180 Wn. App. at 159 (quoting *Stiefel*, 132 Wn. App. at 529 (proprietary functions include provision of medical and psychiatric care and sewage system operation)).

Conversely, "'[g]overnmental functions are those generally performed exclusively by governmental entities.'" 180 Wn. App. at 159 (alteration in original) (quoting *Stiefel*, 132 Wn. App. at 529). Governmental functions are normally those that involve ensuring compliance with state law, issuing permits, and performing activities for the public welfare. *See Wash. State Major League Baseball Stadium Pub. Facilities Dist. v. Huber, Hunt & Nichols-Kiewit Constr. Co.*, 165 Wn.2d 679, 686-88, 202 P.3d 924 (2009); *Fabre*, 180 Wn. App. at 159; *Okeson*, 150 Wn.2d at 551 (operating street lights); *Stiefel*, 132 Wn. App. at 529-30 (operating a fire department); *Dorsch v. City of Tacoma*, 92 Wn. App. 131, 136, 960 P.2d 489 (1998) (issuing electrical permits); *Hoffer v. State*, 110 Wn.2d 415, 421-22, 755 P.2d 781 (1988) (auditing of public offices and registering of securities). Consistent with this, inspections generally constitute governmental functions. *Taylor*, 111 Wn.2d at 164-65 (building inspections); *Loger v. Washington Timber Products, Inc.*, 8 Wn. App. 921, 931, 509 P.2d 1009 (1973) (safety inspections). The public duty doctrine precludes liability for a governmental entity's governmental functions. *Fabre*, 180 Wn. App. at 159.

II. THE PUBLIC DUTY DOCTRINE'S APPLICABILITY TO THE DEPARTMENT'S INSPECTION

Sunshine argues that the Department's cattle inspections constitute a proprietary function to which the public duty doctrine does not apply. We disagree because the cattle inspections are a function performed exclusively by governmental entities and for the common good of all, but not for the special benefit or profit of the Department.[5]

---

[5] Sunshine argues that our interpretation of the inspections' purpose and the Department's inspection powers should be guided in part by Department inspector Thomas Groff's deposition before the superior court, particularly Groff's statement that the inspections' purpose is to protect the cattle's true owners. But because the Department is an administrative agency, it is a creature

A.  *The Department's Cattle Inspections are a Function Generally Performed Exclusively by Governmental Entities*

Sunshine argues that the cattle inspections are not a function generally performed exclusively by governmental entities because chapter 16.57 RCW grants the Department broad powers over privately owned cattle by authorizing the Department to impound cattle and hold the proceeds from cattle sales. RCW 16.57.290, .300. We disagree.

Under chapter 16.57 RCW, the Department *compels* cattle owners to submit to the Department's cattle inspections, traffic stops, searches of buildings and vehicles, and seizures of cattle and sale proceeds. RCW 16.57.170-.200, .245, .270, .290-.320. If an inspection gives the Department a reason to believe an individual is transporting, holding, selling, or slaughtering stolen cattle, the Department may arrest that individual. RCW 16.57.210. Compelled inspections, searches, and seizures are functions generally performed exclusively by governmental entities. *See generally Taylor*, 111 Wn.2d at 164-65; *Loger*, 8 Wn. App. at 931. This is particularly true here because the inspections are ensuring compliance with the state laws, specifically the state laws prohibiting livestock theft. *See* RCW 9A.56.080-.083.

Sunshine is correct that chapter 16.57 RCW gives the Department great power over privately owned cattle by authorizing the Department to impound cattle and to hold the proceeds

---

of statute, and its authority is limited to that authority granted by the legislature. *Fahn v. Cowlitz County*, 93 Wn.2d 368, 374, 610 P.2d 857 (1980); *Davidson Serles & Assocs. v. Cent. Puget Sound Growth Mgmt. Hearings Bd.*, 159 Wn. App. 148, 155, 244 P.3d 1003 (2010). Because the act authorizes cattle inspections and defines the scope of the Department's inspection powers and Sunshine does not allege that the Department exceeded the act's grant of inspection powers, we interpret the inspections' purpose and the Department's inspection powers by referring to the act, not the depositions before the superior court.

from cattle sales. But this lends only further support to the inspections' governmental nature because exercising power over property without the owner's consent is a function generally performed exclusively by governmental entities. *See, e.g., Cent. Puget Sound Reg'l Transit Auth. v. Miller*, 156 Wn.2d 403, 410-11, 128 P.3d 588 (2006) (eminent domain). Thus, we hold the inspections are a function generally performed exclusively by governmental entities.

B.     *The Inspections Are for the Common Good of All*

Sunshine argues that the inspections are not for the common good of all because they are meant to protect cattle owners from theft. We disagree. The inspections are for the common good of all because they promote the public welfare in two ways.

First, as Sunshine correctly noted, the cattle inspections prevent theft. Theft prevention promotes the public welfare by encouraging farmers to invest in raising cattle for society's consumption with less fear of theft.

Second, inspecting cattle to determine ownership helps ensure the orderly raising, transportation, sale, and slaughter of cattle. This promotes the public welfare by reducing the risk that cattle will become contaminated, and thus, unsafe for human consumption. Thus, we hold that because the inspections promote the public welfare, they are for the common good of all.[6]

---

[6] We also note that the public policy underlying the public duty doctrine supports that the Department's cattle inspections should be a governmental function to which the public duty doctrine applies. If the Department could face liability for negligently failing to discover that cattle were stolen, it would discourage the legislature from authorizing the Department to inspect cattle for the public welfare by subjecting the Department to potentially unlimited liability for the actions of cattle thieves. *See Stiefel*, 132 Wn. App. at 528. Ensuring compliance with the laws preventing theft of cattle should not lead the government to absorb liability for private individuals' violations of those laws. *See Taylor*, 111 Wn.2d at 170-71.

No. 46322-9-II

C.    *Special Benefit or Profit of the Department*

Sunshine argues that because the Department charges fees for its inspections, the inspections are for the special benefit or profit of the Department. We disagree.

Although the Department charges fees for its inspections, the fees are used to carry out the purposes of chapter 16.57 RCW. RCW 16.57.370. Thus, these inspection fees are to make the Department's regulatory inspections financially independent. Such financial independence is for the common good of all taxpaying citizens, not for the special benefit or profit to the Department.

We hold that the cattle inspections are a governmental function, rather than a proprietary function. Therefore, the public duty doctrine precludes the Department's liability for negligent cattle inspections. We affirm the superior court's grant of summary judgment to the Department and its denial of partial summary judgment to Sunshine.

_____
Worswick, P.J.

We concur:

_____
Maxa, J.

_____
Lee, J.

10